[Civil No. 4213. Filed December 9, 1940.]

[107 Pac. (2d) 1075.]

SCHOOL DISTRICT No. 1, APACHE COUNTY, Appellant, v. E. I. WHITING, Doing Business Under the Firm Name and Style of THE CASH STORE, Appellee.

Mr. Earl Platt, for Appellant.

Mr. F. Ray Brown, for Appellee.

LOCKWOOD, J.—E. I. Whiting, doing business under the firm name and style of The Cash Store, hereinafter called plaintiff, brought suit against School District No. 1 of Apache County, hereinafter called defendant, for the value of goods, wares and merchandise furnished by plaintiff to defendant. Defendant answered, denying the material allegations of the complaint, and alleging as a special defense that if the goods were furnished they were for the construction of a new school building for District No. 1, and that the only persons authorized to order goods for such purpose, to wit, the board of supervisors of Apache county, had not ordered them and, indeed, expressly refused to authorize their purchase. Defendant also counterclaimed for an alleged overpayment of several items which were legitimately a charge against the district. The case came on for trial before the court

sitting with a jury, and judgment was rendered in favor of plaintiff on his complaint, and of defendant on its cross-complaint. Thereafter, defendant brought the judgment against it before us for review. No appeal was taken by plaintiff for the judgment on the cross-complaint.

There are two questions of law for our consideration on the appeal. The first is as to the admissibility of certain evidence. Plaintiff endeavored to prove the sale and delivery of the goods on which his action was based by a certain book of account. He testified that the accounts against defendant, which were contained in this book, were in the handwriting of his daughter and of one Dewey Farr, identifying the particular items, and that at the time the entries were made the entrants were in his employ, and their duties were to keep the accounts in question. He explained fully the method in which the accounts were kept, but neither of the parties who made the entries were called to identify them, and it was not shown that they were either dead or absent from the jurisdiction of the court. Defendant objected to the admission of the book, contending that before it was admissible the persons who actually made the entries must be called to prove them, or else it must be shown that they were dead or without the jurisdiction of the court. The objection was overruled and the book admitted, and plaintiff's entire case as to the sale and delivery of the goods, and the reasonable value thereof, must rest upon it. Section 4463, Revised Code of 1928, regulates the admissibility of books of account, and reads as follows:

"Books of accounts; *prima facie* evidence; entries by deceased person. Whenever a party in any action shall produce at the trial his account books, and prove that the same are his account books kept for that purpose, that they contain the original entries for moneys

paid, goods, or other articles delivered, services performed, or material furnished, that such entries were made at the times of the transactions therein entered, that they are in his handwriting or that of a person authorized to make charges in said books, and are just and true to the best knowledge and belief of the person making such proof, such books, subject to their credibility, shall be received as *prima facie* evidence of the charges therein contained. If any book shows that the items have been transferred to a ledger, it shall not be received unless the ledger is produced. Entries made in a book by a person authorized to make the same, he being dead, may be received on proof that the same are in his handwriting."

This section first appeared in our law as paragraph 1756, Revised Statutes of Arizona 1913, and was taken from section 4719, Revised Laws of Minnesota 1905. It apparently first appeared in the Minnesota statutes, in its present form, in 1876. Before that time Minnesota followed the old common law practice of requiring the person who actually made the entries to verify them, but in that year the statute was changed so that the party offering the books was, as under our law, permitted to "prove" that the charges were in the handwriting of the person authorized to make them. In the case of *Webb* v. *Michener,* 32 Minn. 48, 19 N. W. 82, 83, the same objection was made to the admission of the books as was made in the present case, to wit, that the party who actually made the entries was not called to prove them, and the court said:

"By the amendment of 1876 material changes were made in the statute in relation to the authentication of account-books. Section 71, c. 73, Gen. St. 1866, which required their verification by a clerk where the original entries were made by him, is repealed, and section 70, which previously provided for the suppletory oath of the party, is amended, so that he is now permitted to 'prove' that the charges are in the

handwriting of a person authorized to make them, and that they are the original entries of goods sold, etc. It was not necessary, therefore, that Canfield should be called to testify as to the entries made by him and we think the evidence sufficient, in view of the circumstances, to make a *prima facie* case that the charges were original entries regularly made as the transactions occurred in the usual course of business. . . . ''

In *Condos* v. *Andalft,* 24 Ariz. 38, 206 Pac. 594, in passing upon the admissibility of books of account under our statute, we said:

''This question having been made the subject of legislative action, we are bound by the terms of the statute, and we can only examine the evidence in the light of this paragraph to ascertain whether or not it comes within the section. . . . ''

Defendant urges that in the case of *Sovereign Camp W. O. W.* v. *Sandoval,* 47 Ariz. 167, 54 Pac. (2d) 557, 558, we held in substance that the statute does not in any manner change the *quantum* of preliminary evidence required to introduce shop books under the common law. The question involved therein was whether certain records of a physician, showing the physical condition of the patient, were admissible under the shop book rule, and we said:

''The section, on its face, shows that it refers only to account books kept by a party to an action, and they are to be received 'as *prima facie* evidence of the charges therein contained.' This is but a statutory re-enactment of the old so-called 'shop book rule,' and by its terms is limited to matters involving the sale of goods or the rendering of services and the charges made therefor. We think it is extending the statute far beyond what the Legislature undoubtedly intended, to say that the clinical records of a physician may be offered to prove not merely services rendered and their value, but, in a suit against a third party by the patient, to show the medical history and condition of the patient on whom the calls were made.

The last sentence of the section, upon which defendant relies, obviously refers to the type of records with which the body of the section deals. . . . "

It will be seen that we did not have under consideration the *quantum* of preliminary evidence necessary to cause the admission of otherwise relevant books of account, but merely the character of the books which are admissible, and that in no way is it a decision that the same *quantum* of preliminary proof was required as under the common law.

Upon an examination of the evidence in the present case, we are satisfied that it was sufficient in both quantity and quality to justify the action of the trial court in admitting the book in question as *prima facie* evidence of the charges contained therein.

 We next consider whether the purchase of the goods was authorized in such a manner to make their value a legitimate charge against the district. A bill of particulars was filed with the complaint dividing the goods sued for into two classes. One class consisted of what was denominated as "School District No. 1 regular account" and upon its face showed that it was principally for material which might be supplies for the operation of the school district, or for repairs around its buildings, although some of the items might have been material for construction of a new building. The other class was an account entitled "School District No. 1 building account" and the evidence of plaintiff shows that his books carried the accounts in this manner. We think on their face and on the evidence of plaintiff the only reasonable conclusion which could be drawn is that part of the goods were furnished for the construction of a new building and the remainder for the general operation of the district, and that all of them were ordered by the board of trustees, and none by the supervisors of Apache county.

We consider, then, the authority of the trustees to charge the district with an indebtedness for goods of this character. This leads us to the consideration of the powers of school trustees. Upon an examination and comparison of all of the various statutes pertinent to the question before us, it appears that there are two methods whereby a common school district may construct new school buildings. If the construction will not cause the district to become indebted in an amount exceeding 4 per cent. of the value of the taxable property within the district, as ascertained by the last assessment, the board of trustees, *when directed to do so by a vote of the district,* may construct new school buildings and pay therefor either by a special tax levy for that purpose, or by the issuance of bonds authorized at an election held for that purpose under statutory authority. Sections 1011, 1012, 1014, 1015 and 1016, Revised Code of 1928. If, however, the cost of such building will increase the indebtedness of the district beyond the 4 per cent., article 5 of chapter 60, Revised Code of 1928, section 2657 et seq., governs the procedure, and in such case if bonds are issued for the purpose of erecting the building, the matter is entirely in the hands of the board of supervisors of the county, and the trustees take no part whatever in adopting the plans and specifications, letting the contract or handling the money to pay for such building. Section 2666, Revised Code of 1928.

Bonds were issued for the purpose of paying for the new building in question, and the evidence is conclusive that at all times from the voting of the bonds up to and including the beginning of this suit, by any reasonable and legal method of computation the indebtedness of the district exceeded the 4 per cent. limit. Such being the case, the supervisors, and they alone, were authorized to incur indebtedness against the building account of the district, for there is no

evidence that the trustees had available, or to become available, either *in praesenti* or in the near future any funds which could properly be charged with the expenses incurred in the erection of a new school building. Section 1026, Revised Code of 1928, as amended by chapter 4 of the first special session of the twelfth legislature expressly provides that only funds received from sources other than state, county or school district levies may be used in building schools. There is no evidence that any such fund was available, or could be made available by the trustees under the situation as it existed at the time the goods were ordered.

Defendant asked that the jury be instructed as follows:

"You are instructed, gentlemen of the jury, that if you believe by the preponderance of the evidence in this case that the total indebtedness of School District No. 1 of Apache County, Arizona was at all times material to this action in excess of four per cent (4%) of the total assessed valuation of said School District, then you are instructed that the Trustees of said School District did not have authority to bind said School District for the purchase of material used in the construction of a new building."

The court refused to give this instruction and instructed the jury as follows:

"Gentlemen of the jury, a serious question of law has arisen as to the bonded indebtedness of the School District, whether it is in excess of four per cent and whether the Trustees had any authority to incur indebtedness beyond that amount. The Court considers that that is a question of law which the Court itself will determine, and so I am, therefore, refusing the Defendant's requested instruction, which in effect would amount to an instructed verdict in favor of the School District, insofar as the building account is concerned."

If the question involved contained an issue of fact it was error for the court to refuse the requested instruction. If it was solely an issue of law, the judgment could not be sustained on the evidence.

It is necessary that the judgment be reversed and the case remanded for a new trial, with instructions to submit to the jury any of the items set up in plaintiff's bill of particulars which may reasonably be shown to be for other than material for the erection of the new school building, and withdraw from their consideration any other items.

ROSS, C. J., and McALISTER, J., concur.