255 P.2d 888

## YOUNG v. BORDER BROADCASTING CO., Inc.

No. 5480.

Supreme Court of Arizona.

April 13, 1953.

Frank J. Barry, of Tucson, for appellant.

Nasib Karam, Duane Bird and Thomas L. Hall, of Nogales, for appellee.

PHELPS, Justice.

Landon Young, plaintiff-appellant, appeals from a judgment entered in the superior court of Santa Cruz County denying him relief upon his complaint against the Border Broadcasting Co., Inc., a corporation, defendant-appellee, and awarding judgment to defendant on its first counterclaim in the sum of $1000 and costs, and from the order of the court denying plaintiff's motion for a new trial.

The parties will be designated herein as plaintiff and defendant as they appeared in the trial court.

The facts are that since its incorporation in 1946 defendant has been the owner of broadcasting station KNOG in Nogales and engaged in radio broadcasting from that point. With the exception of one share of stock owned by Ruffo Espinosa, all the outstanding stock of the corporation was owned by Robert and Sam Marcus, father and son.

On May 31, 1949, Robert and Sam Marcus entered into an agreement with the plaintiff Landon Young wherein they agreed to sell and plaintiff agreed to buy all of their stock in defendant corporation for a sum certain to be paid for as therein provided. The agreement provided that the sale of the stock to plaintiff was made sub-

ject to the approval of the FCC (Federal Communications Commission).

There was also incorporated in the contract the provisions that the Marcuses were to cause defendant corporation to enter into an employment agreement with plaintiff for a period of one year upon the terms and conditions expressly defined in said written agreement as follows, to wit:

"3. To cause said Border Broadcasting Co., Inc. to enter into an employment agreement with said party of the second part whereby he shall be employed for the period of one (1) year from June 1, 1949, as General Manager of said corporation at a monthly compensation equal to the amount of the excess, if any, of receipts over disbursements including monthly liability to Graybar Electric Company, Inc., in the operation of radio station KNOG with the obligation on his part to pay to said corporation monthly the amount of the deficit, if any, between receipts and disbursements in the operation of radio station KNOG."

and plaintiff therein agreed to enter into said agreement with defendant.

Plaintiff on the following day, June 1, 1949, assumed the duties of his employment by taking over the management and control of station KNOG and continued to perform the same until July 6 or 7 of 1949 when he notified the Border Broadcasting Co., Inc. by letter

"* * * that any connection I may have had with KNOG, as acting manager or whatever it was, is hereby terminated as of the close of business July 7, 1949."

and in said letter plaintiff advised defendant that he had expended the sum of $1,557.70 for and on behalf of defendant and offered to accept the sum of $1,157.70 as settlement in full for such expenditures and threatened suit for more than $1,557.70 if payment was not forthcoming. The letter and demand were ignored by defendant and this action was instituted on July 11 following.

Plaintiff has presented six assignments of error for our consideration which when boiled down to final analysis are based (1) upon plaintiff's claim that the evidence was sufficient to sustain the allegations of plaintiff's complaint and to entitle him to judgment thereon; (2) that the court erroneously excluded evidence which should have been admitted and received evidence which should have been excluded; and (3), judgment entered by the court on defendant's first counterclaim was based upon evidence erroneously admitted, and that the court should have granted plaintiff's motion for a new trial.

It is the contention of plaintiff, first, that the written contract of May 31 was made subject to the approval of the FCC and since such contract was never approved by said commission it never became a valid contract binding upon the parties

thereto and consequently plaintiff's contract of employment never became valid. We do not believe the written contract of May 31 is susceptible of such interpretation. It will be observed, as counsel for plaintiff concedes, that the contract of May 31 was for the sale of the outstanding stock of the Border Broadcasting Co., Inc. by Robert Marcus and Samuel Marcus as individuals to plaintiff in which the Marcuses bound themselves to cause defendant Border Broadcasting Co., Inc., a corporation, to enter into a contract with plaintiff for his employment for the period of one year upon the terms and conditions therein outlined. The Marcuses testified that on the same day that such contract was executed they had "a separate meeting of our corporation at which Mr. Young was not present" and carried out the covenant in the written agreement; that the broadcasting company did enter into an agreement with plaintiff for his employment. Mr. Young both admitted and denied such an agreement. To reach the conclusion it did the court had to find that there was an agreement of employment between the broadcasting company and Young and we believe there is substantial evidence to support such finding. In any event, as we have so many times held this court will not disturb the finding of the lower court based upon conflicting evidence.

If we assume that the written contract between the Marcuses and plaintiff was subject to approval of the FCC and under ordinary circumstances would not become operative until such approval was obtained it does not follow that the contract of employment never became operative. The contract for the sale of the corporation stock is an entirely separate agreement from the contract of employment subsequently entered into between plaintiff and defendant. We are not concerned here with a severable or divisible contract as counsel for appellant seems to believe. The most that the Marcuses did in the contract of May 31 was to bind themselves as individuals to see that the Border Broadcasting Co., Inc., a separate legal entity, did thereafter enter into a contract of employment with plaintiff. This they testified they did do and plaintiff testified that he took charge of the station the following day. Plaintiff certainly had no authority under the terms of an agreement with the Marcuses as individuals to take charge of, and manage and control the property of the defendant corporation and no such authority can be gleaned from the language employed in such contract.

There is nothing in the record indicating a request on the part of defendant that plaintiff take over the management of KNOG, and unless there did exist an agreement between plaintiff and defendant for such management and control by him then he was a trespasser upon the property and under such conditions an action in quantum meruit would not lie. As above stated, however, the court found on conflicting

evidence that plaintiff was operating KNOG as manager during the period involved, under an agreement between plaintiff and defendant broadcasting company.

■■ The above being true, is plaintiff entitled to maintain an action against defendant in quantum meruit? It is a well-established rule of law in this jurisdiction that unless defendant had breached its contract of employment with plaintiff prior to the termination of the contract by plaintiff's letter of July 11 plaintiff had no cause of action either on the contract or in quantum meruit against defendant. The last decision handed down by the court on this question is Spitalny v. Tanner Construction Company, Ariz., 254 P.2d 440, in which we held in substance that a person may sue either on the contract or in quantum meruit where the other party to the contract had breached it and where the party bringing the action had fully performed his part of the contract up to the date of breach. See also Pleasant v. Arizona Storage & Distributing Co., 34 Ariz. 68, 267 P. 794.

■ There is no evidence whatever in the record to the effect that defendant had breached its contract of employment with plaintiff prior to the date of termination thereof by plaintiff. Plaintiff attempted to terminate his contract of employment with defendant broadcasting company upon the claim that the Marcuses had breached their contract with him. This he could not do. His right to terminate his contract of employment with defendant can only arise

as a result of defendant's prior breach of the contract of employment. Under no theory of the law could such a right arise as a result of a breach of another contract with plaintiff by strangers to the contract of employment. Insofar as we are informed from the briefs of either counsel the contract of employment between the Border Broadcasting Co., Inc. and plaintiff was not made subject to approval by the FCC and there is nothing in the evidence to support such a claim. The contract of employment was not reduced to writing prior to its termination by plaintiff and therefore is not available for our inspection.

■ Counsel for plaintiff next contends that the only contract involved in the litigation is the written contract of May 31 which was expressly made subject to approval of the FCC and that it was voluntarily abandoned by the parties. He assigns as error the refusal of the court to admit in evidence certain unsigned drafts of agreements which he claims tended to prove an abandonment of such written agreement. As above pointed out the Marcuses as individuals had no authority to employ plaintiff and they did not agree to do so. They only agreed to cause the broadcasting company to employ him. This they did. The failure of the FCC to approve the sale of stock of the corporation and incidentally the transfer of ownership of KNOG to plaintiff did not affect the contract of employment between plaintiff and defendant. If plaintiff and defendant

intended that the contract of employment of plaintiff as manager of KNOG for one year was to be affected by the approval or disapproval of the sale of the outstanding stock of the corporation and the transfer of ownership of KNOG to plaintiff or if they intended such employment should be affected by the abandonment of the contract between said parties such contingency should have been provided for in the contract of employment. Our authority is limited to the interpretation of contracts as we find them. The court cannot make a contract for the parties.

For the reasons above stated we hold that the trial court did not err in rejecting the unsigned documents. It is immaterial insofar as this litigation is concerned whether such contract was or was not abandoned or was or was not approved by the FCC in the absence of some stipulation in the contract as to what effect such abandonment or failure of the FCC to approve it would have on the contract of employment.

We feel that the other assignments of error become unimportant when considered in connection with our interpretation of the contract of May 31. There is ample evidence to support the judgment of the trial court on behalf of defendant on its first counterclaim against the plaintiff. We are also of the view that there was sufficient foundation laid for the admission of the books and records of the corporation in evidence. School Dist. No. 1, Apache County v. Whiting, 56 Ariz. 334, 107 P.2d 1075. The conclusion reached by us certainly makes it unnecessary to discuss the effect of plaintiff's failure to fill out forms required by the FCC, if he did fail to do so, in order that it may be in a position to approve or disapprove the contract between plaintiff and the Marcuses.

The judgment of the trial court is affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.