[Civil No. 2243.   Filed May 9, 1925.]

[236 Pac. 126.]

COMMERCIAL CREDIT COMPANY, a Corporation, Appellant, v. E. A. EISENHOUR and FLOYD EISENHOUR, Copartners Doing Business Under the Firm Name and Style of EISENHOUR MOTOR COMPANY, Appellees.

1. ESTOPPEL—ASSIGNEE RECEIVING PAYMENT FROM SELLERS ON NOTES ESTOPPED TO CLAIM THAT NOTES WERE NOT A BINDING OBLIGATION ON SELLERS.—Where assignee of notes and conditional contract for sale of automobile elected to declare such notes due and payable on purchaser's default instead of considering them satisfied

--------

1.   See 10 R. C. L. 694.

by surrender of car, and notified sellers to that effect, and re-
ceived payment thereon from sellers on its contention that notes
were binding obligation on sellers as sureties, it was estopped to
claim that they were not when sued for conversion of insurance
policy.

2. INSURANCE—PRINCIPAL AND AGENT—NOTICE TO AGENT TAKING IN-
SURANCE APPLICATION AND PURCHASING NOTES HELD NOTICE TO
DEFENDANT AND INSURER.—Where insurance agent, taking applica-
tion for insurance on automobile sold under conditional sales con-
tract, and purchasing notes representing balance of purchase price,
as defendant's agent, was acting within scope of his authority,
notice to him was notice to insurer and defendant, and they were
bound to know that policy was taken out by purchaser as collat-
eral security to protect him and his sureties, and that premium
was paid by him.

3. INSURANCE—INSURER, IN CASE OF LOSS OF MORTGAGED PROPERTY,
NOT SUBROGATED TO RIGHTS OF MORTGAGEE AGAINST MORTGAGOR.—
Where policy on mortgaged property is taken out at mortgagor's
expense to better secure payment of debt, insurer, in case of loss
by fire, is not subrogated to rights of mortgagee as against
mortgagor, but amount paid on policy operates *pro tanto* as pay-
ment of the debt, and same rule applies to conditional sales.

4. INSURANCE—SUBROGATION—SELLERS OF AUTOMOBILE UNDER CONDI-
TIONAL SALES CONTRACT ENTITLED TO SUBROGATION TO RIGHTS OF
PURCHASER UNDER POLICY ON PAYMENT OF NOTES TO ASSIGNEE;
ASSIGNEE NOT ENTITLED TO SURRENDER POLICY.—Where automobile
was sold under conditional contract of sale, and purchaser took
out insurance thereon in favor of assignee of notes and contract,
sellers liable on notes as sureties were entitled to subrogation to
purchaser's rights on payment of balance of indebtedness, and
assignee had no right to deprive them of such right by surrender
of policy after loss occurred.

5. TROVER AND CONVERSION—INSURANCE POLICY SUBJECT TO CONVER-
SION.—Written instruments such as insurance policies are subject
to conversion.

6. TROVER AND CONVERSION—MEASURE OF DAMAGES FOR CONVERSION OF
FIRE POLICY STATED.—Where assignee of purchase-money notes
and conditional sales contract, in whose favor purchaser took out
insurance, surrendered policy to insurer after loss had occurred,
and notes had been paid by sellers as sureties, sellers had right

2. Notice to agent as binding principal, see notes in 36 **Am.**
**Dec.** 188; Ann. Cas. 1912A, 549. See, also, 21 R. C. L. 838.

3. See 14 R. C. L. 1406.

5. See 26 R. C. L. 1106.

6. See 26 R. C. L. 1151.

of action for conversion, but measure of damages was inconvenience, trouble and expense to which they were put, since their right to recover from insurer still existed.

See (1) 21 C. J., p. 1125.   (2) 2 C. J., p. 859; 32 C. J., p. 1086. (3) 26 C. J., pp. 457, 461.   (4) 28 Cyc., p. 50 (1926 Anno.); 37 Cyc., p. 416.   (5) 38 Cyc., p. 2012.   (6) 32 C. J., p. 1266 (1926 Anno.); 38 Cyc., p. 2099.

APPEAL from a judgment of the Superior Court of the County of Gila. C. C. Faires, Judge. Judgment reversed and cause remanded.

Messrs. Morris & Malott, for Appellant.

Mr. H. L. Partridge, for Appellees.

LOCKWOOD, J.—E. A. Eisenhour and Floyd Eisenhour, copartners as the Eisenhour Motor Company, hereinafter called plaintiffs, brought an action in conversion against the Commercial Credit Company, a Corporation, hereinafter called defendant, for damages which plaintiffs allege have been caused them by reason of the refusal of defendant to deliver to plaintiffs a certain fire insurance policy issued by North British and Mercantile Insurance Company, hereinafter called the insurance company, and by the action of defendant in canceling said policy and surrendering it to the insurance company.

The case was tried to the court without a jury on an agreed statement of facts which we summarize, so far as necessary, for the purpose of this case, as follows: Plaintiffs were engaged in the automobile business in Gila county. On February 2, 1921, with the approval of defendant, they sold a certain automobile to one De la Mothe under the usual conditional sales contract, taking notes for the balance due thereon of $2,000. These notes, together with the contract of sale, were, for a valuable consideration, assigned by plaintiffs to defendant and their payment guaranteed

by plaintiffs as sureties. At the time of the sale to De la Mothe he, in order to secure plaintiffs, defendant, and himself, as their interests might appear against loss by fire of the automobile, applied to the insurance company through one Sam Mishkin, its agent, for a $2,200 fire insurance policy on the auto, paying the premium thereon. Mishkin was also agent for the defendant for the purpose of purchasing just such notes as those herein, and when the policy was issued defendant was named as the insured therein; no reference being made to De la Mothe or the plaintiffs, and it was delivered to defendant. About February 19, 1921, De la Mothe defaulted in his payment, and voluntarily surrendered the car. Defendant thereupon declared the notes due and payable instead of accepting the car as full settlement thereon, but, in place of selling it at a public auction under the statute, delivered the car to plaintiffs, by mutual agreement between them and defendant, so that they might sell it at private sale and apply the proceeds upon payment of the notes upon which they were sureties; the defendant having notified them it intended to hold them as such sureties. On May 21, 1921, the auto, while in the possession of plaintiffs for the purpose aforesaid, was totally destroyed by fire. Defendant notified plaintiffs that it still intended to hold them on the notes, and on May 31st brought suit against them as sureties thereon and attached certain property of theirs. On June 1st plaintiffs paid to defendant the full amount due on the notes, and at the time demanded from defendant's attorney and from Mishkin a transfer and delivery of the policy to them. This was refused, and on the same day Mishkin, in his capacity as agent for defendant, wrote to its home office in Baltimore asking that the policy be canceled and returned to him as agent for the insurance company, which was done. At the time of the surrender and attempted cancel-

lation of the policy the insurance company had full knowledge plaintiffs had paid defendant the amount of the note, but, although plaintiffs made proof of their loss and asked for settlement under the policy, the insurance company refused to. pay anything, on the ground that the policy ran only to defendant and had been surrendered by it. On this statement of facts the court rendered judgment for plaintiffs in an amount equal to the value of the auto at the time of its destruction, and defendant appealed.

Plaintiffs base their claim to recovery on the theory that, having paid the De la Mothe notes on which they were sureties, they were entitled to the insurance policy and any right of recovery thereon, and the cancellation and surrender of the policy by defendant after the fire had occurred was a conversion of property belonging to them. Defendant's position is as follows: First, by failure to sell the auto at public auction and accepting its surrender, defendant had released De la Mothe from any liability on the notes and plaintiffs were therefore also discharged. Such being the case, if they were no longer bound to pay the notes, they could in no manner have any interest in the policy, and a voluntary payment by them could not change conditions; second, the policy ran to defendant, as the insured and De la Mothe in no event had any interest therein, and, if he had none, there was nothing for plaintiffs to take; third, if De la Mothe had any interest in the policy, the surrender by defendant of its rights therein could in no manner affect the rights of plaintiffs, for in a suit against the insurance company on the policy, even assuming that plaintiffs had had any right therein, the release by defendant of its rights could in no manner be used as against plaintiffs, and there was no conversion of anything of value.

We do not think defendant's first position can be sustained. On February 19th it elected to declare

the notes due and payable instead of considering them satisfied by the surrender of the car, and notified plaintiffs to that effect. Later it brought suit against the plaintiffs as sureties on the notes, and as a result of such suit they paid them. It would be a manifest injustice, defendant having received payment from plaintiffs on its own contention that the notes were a binding obligation upon them, now to allow it to claim that they were not. *Del Bondio* v. *New Orleans Mutual Insurance Co.*, 28 La. Ann. 139; *Martin* v. *Boyce*, 49 Mich. 122, 13 N. W. 386; 21 C. J., p. 1225.

The second point presents a greater difficulty. The insurance policy was issued in the name of defendant alone as the insured therein. On the other hand Mishkin, who handled the entire transaction for both defendant and the insurance company, was obviously acting strictly within the scope of his authority in everything connecting with the transaction. Notice to him was notice to them. 2 C. J., p. 859. They therefore were bound to have knowledge that the policy was taken out at the request of De la Mothe as collateral security for his notes and to protect him and his sureties, and that the premium was paid by him.

In a conditional contract of sale with reserved title in the vendor, we think the situation is analogous to that of mortgagor and mortgagee, and governed by the same rules so far as questions of insurance are concerned. 26 C. J., p. 457.

Now, where the policy was taken out at the mortgagor's expense to better secure the payment of the debt, the insurer, in case of loss by fire, is not subrogated to the rights of the mortgagee as against the mortgagor, but the amount paid on the policy operates *pro tanto* as payment of the debt. *Pendleton* v. *Elliott*, 67 Mich. 496, 35 N. W. 97; *Fire Association* v. *Patton*, 15 N. M. 304, 27 L. R. A. (N. S.) 420,

107 Pac. 679; *Kernochan* v. *Insurance Co.,* 17 N. Y. 428; *Cone* v. *Insurance Co.,* 60 N. Y. 619.

Such being the case, we think it only logical that, when the loss has already occurred, even though the policy shows the mortgagee as the insured party, it may not by surrendering and canceling policy deprive the mortgagor of his vested right to have the proceeds of the policy applied in payment of the debt. Had defendant collected the policy and then sued either De la Mothe or the plaintiffs on the notes, they could certainly have set up as a defense *pro tanto* the amount recovered on the policy, and it follows that under the present circumstances plaintiffs were entitled to recover on the policy against the insurance company and to the possession of that policy, since they, being security for De la Mothe, after paying the indebtedness, were entitled to be subrogated to every right which he had. *United National Bank* v. *Tappan,* 33 R. I. 1, 79 Atl. 946, 958; *Continental Ins. Co.* v. *Parkes,* 142 Ala. 650, 39 South. 204; *Bright* v. *Mack,* 197 Ala. 214, 72 South. 433; *English* v. *Palmer National Bank,* 202 Ill. App. 372.

This brings us to the third point made by defendant. Admitting all that is said above, was there a conversion of anything of value by defendant? Unquestionably written instruments such as insurance policies are subject to conversion. 38 Cyc. 2012.

Defendant, however, urges that, since the policy was merely evidence of a contract and the plaintiffs' right of action, if any, against the insurance company was not affected by the acts of defendant, nothing of value was taken. This is not true. The policy afforded the easiest and best way of proving the contract, and plaintiffs by reason of the conversion certainly were put to expense and trouble. They were entitled to at least nominal, and very possibly substantial damages, but were they entitled to recover the full value of the auto destroyed by fire?

The only authorities dealing directly with the conversion of insurance policies we have been able to find are: *Hayes* v. *Mass. Mutual Life Ins. Co.,* 125 Ill. 626, 1 L. R. A. 303, 18 N. E. 327; *Mutual Life Ins. Co.* v. *Allen,* 212 Ill. 134, 72 N. E. 200.

In these cases the measure of damages was held to be the full amount of the policy, but it will be noticed that in each of them the defendant was the company issuing the policy and the judgment in effect canceled the policy. Such is the rule in the many cases reported where the document converted was a promissory note or a bond and the title had passed, apparently on the theory that plaintiff could no longer recover the debt. We think the principle laid down in *Mowry* v. *Wood,* 12 Wis. 460, 468, sets up the proper test for fixing damages for conversion of a document. The documents converted were four school land certificates, embracing a quarter-section of land. The court says:

"The certificates were not title but merely the evidences of title. They might have been utterly lost or destroyed, and yet the title or ownership of the land have remained subject to the same conditions under which it was then held. Hence the conversion of the certificates was not a conversion of the land, or of Wood's interest, for those were incapable of conversion. As mere contracts on paper, to the possession of which the owner was entitled, the certificates were the same as any other chattel, and it is in this light, I apprehend, that trover for title deeds is maintained. It would not seem to be the object of the action to restore to the owner the value of the land, for that he has not lost; but to compensate him for the injury and inconvenience which he has suffered in consequence of his being deprived of the possession of his paper evidences of title, and perhaps, in proper cases, to compel their restitution. . . . In actions of the ordinary kind for the conversion of goods or choses in action, as bills or notes, the measure of damages is the value of the property and interest from the

time of the conversion. But in such cases there is a substantial loss of property, and the recovery of the judgment and a satisfaction of it, operate as a transfer of the title. There are, therefore, very good reasons for the rule. . . . I should think, therefore, that in those cases where the title is unaffected, and the conduct of the defendant has not been fraudulent or oppressive . . . the more just rule of damages would be such sum as would recompense the plaintiff for any actual loss which he may have sustained, and for his trouble and expenses in going into a court of equity or elsewhere, to establish and perpetuate the evidence of his title, with the costs of the action. . . . If the taking, loss or destruction, was wanton or malicious, the jury, might add such sum, by way of punishing the defendant, as in their judgment the circumstances required. . . . If it should appear that the defendant still possessed the deed or writing, and stubbornly or vexatiously refused to surrender or produce it, damages to the full value of the land, and even beyond, might be given, in order to compel a return, and as a penalty for the obstinacy and vexation.''

This rule appears to be in consonance with justice. The right of plaintiffs to recover from the insurance company still exists, and the judgment against defendant in this case for conversion will not cancel the insurance or destroy the right of plaintiffs to their suit against the insurance company. On the other hand, there is no doubt, by reason of the action of defendant, plaintiffs have been substantially damaged and are entitled to a judgment therefor. The measure of the damages, however, is not the value of the automobile, for that will be recovered from the insurance company if plaintiffs establish their rights thereto according to the principles declared herein, but the inconvenience, trouble, and expense to which they have been put by reason of defendant's tortious action.

The judgment is reversed and remanded to the superior court of Gila county for proceedings not inconsistent with this opinion.

ROSS, J., concurs.