[Civil No. 3648.  Filed February 10, 1936.]

[54 Pac. (2d) 557.]

# THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, a Corporation, Appellant, v. ROSA SANDOVAL, Appellee.

Mr. Amos A. Betts, Mr. Richard F. Harless, Mr. Terrence A. Carson and Mr. I. F. Wolpe, for Appellant.

Mr. V. L. Hash and Mr. L. C. McNabb, for Appellee.

LOCKWOOD, C. J.—This is an appeal by the Sovereign Camp of the Woodmen of the World, a corporation, hereinafter called defendant, from a judgment in favor of Rosa Sandoval, hereinafter called plaintiff, on an insurance policy issued by defendant covering the life of plaintiff's deceased husband. The case was tried to a jury, which returned a verdict in favor of plaintiff, and after the usual motion for a new trial was overruled, this appeal was taken.

There are three questions raised by defendant in its assignments of error, which we will consider as seems advisable. In order to do this intelligently, it will require a brief statement of the issues framed by the pleadings and the evidence in the case.

The complaint is in the usual form, setting up the issuance of an insurance policy on the life of one Emilio Sandoval, hereinafter called deceased; that plaintiff was the beneficiary named in said policy; the regular payment of the premiums; the death of Sandoval; and the demand for payment.

Defendant answered, admitting the issuance of the policy and the payment of the regular premiums thereon up to the death of Sandoval on September

16, 1933. It then alleges as an affirmative defense that, as a precedent to the issuance of 'the policy, deceased, in a written application therefor on June 15, 1932, with intent to defraud defendant, made certain representations of fact which were, to his knowledge, untrue; that these representations were, by the terms of the application and policy, warranted by the deceased to be true, and it was agreed that if they were not, the policy should be void. The particular representations, which it is alleged were false, fraudulent and untrue, were: (a) That he had not within five years previous. to the issuance of the policy suffered any bodily disease or infirmity; (b) that he had not within the previous five years consulted a physician, or been attended by such, for any disease or injury; and (c) that he was in good health at the time of making the application. The answer alleges that, as a matter of fact, during the five-year period he had suffered from asthma, sinus trouble and tuberculosis; that he had repeatedly been attended by physicians during that time; and that at the time of the issuance of the policy he was not in good health.

When the case was tried, defendant introduced three medical witnesses who testified that they had respectively attended Sandoval at various times previous to the making of the application, and that he was suffering from several different ailments, being chronic asthma, fibrous bronchitis and a general tubercular condition. It also attempted to introduce in evidence a card taken from a card index of another physician who, at the time of the trial, was dead, and the death certificate of Sandoval. These offers were denied by the court, and it is upon its action in this respect that two of the propositions relied upon by defendant are based.

We consider first the matter of the card. It appears from the deposition of one Grace Angulo that she was the secretary of the deceased physician; that among his records there was a card upon which there was certain typewriting, which she testified she had done under his direction, and other matter which was in the handwriting of the physician himself. The entry in the handwriting was to the effect that on the 15th day of May, 1932, just thirty days before the application for insurance was made, deceased was suffering from laryngeal and pulmonary tuberculosis. Objection was made to the admission of the card on the ground that it was hearsay in its nature. Defendant insists that it should have been admitted, under the provisions of the last sentence of section 4463, Revised Code of 1928, which section reads as follows:

"Books of accounts; *prima facie* evidence; entries by deceased person. Whenever a party in any action shall produce at the trial his account books, and prove that the same are his account books kept for that purpose, that they contain the original entries for moneys paid, goods, or other articles delivered, services performed, or material furnished, that such entries were made at the times of the transactions therein entered, that they are in his handwriting or that of a person authorized to make charges in said books, and are just and true to the best knowledge and belief of the person making such proof, such books, subject to their credibility, shall be received as *prima facie* evidence of the charges therein contained. If any book shows that the items have been transferred to a ledger, it shall not be received unless the ledger is produced. Entries made in a book by a person authorized to make the same, he being dead, may be received on proof that the same are in his handwriting."

The section, on its face, shows that it refers only to account books kept by a party to an action, and

they are to be received "as *prima facie* evidence of the charges therein contained." This is but a statutory re-enactment of the old so-called "shop book rule," and by its terms is limited to matters involving the sale of goods or the rendering of services and the charges made therefor. We think it is extending the statute far beyond what the legislature undoubtedly intended, to say that the clinical records of a physician may be offered to prove not merely services rendered and their value, but, in a suit against a third party by the patient, to show the medical history and condition of the patient on whom the calls were made. The last sentence of the section, upon which defendant relies, obviously refers to the type of records with which the body of the section deals. We think, therefore, the court properly refused to admit the card offered in evidence.

The second question is in regard to the death certificate. Article 6 of chapter 61, Revised Code of 1928, provides that the physician who is last in attendance upon a deceased person shall file a certificate with the state board of health, which certificate shall contain, among other things, "the cause of death, the course of disease or sequence of causes resulting in the death, naming the disease causing death and the contributory cause, if any, *and the duration of each*" (section 2729), and that "any . . . copy of the record of a birth or death, when properly certified by the registrar, shall be *prima facie* evidence of the facts therein stated." (Section 2740.) Section 4454, Revised Code of 1928, also provides that the records required to be made and kept by a public officer of a state, county, municipality, or of any body politic, and copies thereof certified, "shall be received in evidence by the courts of the state as *prima facie* evidence of the facts therein stated."

We think there is no question that, under these sections of the Code, the certified copy of a death certificate, duly filed with the state board of health as required by law, is admissible in evidence as *prima facie* proof of all the facts which the law requires to appear in such certificate, provided, of course, that such facts bear upon one of the material issues of the case being tried. *California State Life Ins. Co.* v. *Fuqua,* 40 Ariz. 148, 10 Pac. (2d) 958; *Security Benefit Assn.* v. *Small,* 34 Ariz. 458, 272 Pac. 647; *Bozicevich* v. *Kenilworth Mercantile Co.,* 58 Utah 458, 199 Pac. 406, 17 A. L. R. 346; *Ohmeyer* v. *Supreme Forest Woodmen Circle,* 91 Mo. App. 189; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 52 Atl. 490. The certificate involved herein states that the principal cause of death was asthma and that the date of the onset was the year 1931. It was offered for the purpose of establishing the fact that the deceased had suffered from a serious disease prior to the making of his application for insurance, and that he was not in good health at the time he applied for the insurance. Plaintiff does not contend seriously that a death certificate is not admissible if it bears on a medical issue of the case, but does most strenuously urge that under the law laid down in *Illinois Bankers' Life Assn.* v. *Theodore,* 44 Ariz. 160, 34 Pac. (2d) 423, 427, it is immaterial, for the reason it has no tendency to show that the deceased knowingly and wilfully misstated his condition. In the case just cited, we discussed thoroughly when misrepresentation of material facts by an applicant for an insurance policy would void the policy. We held as follows:

"We hold, therefore, that under the law of Arizona, a false representation in an application for an insurance policy will not make voidable the policy, unless the insured has been guilty of either legal or actual

fraud in making it; that if the question is one where the facts are presumably within the personal knowledge of the insured, and are such that the insurer would naturally have contemplated that his answers represented the actual facts, if the representation be false, the insured is guilty of legal fraud, although as a matter of fact he may not have intended to deceive the insurer; but that where the question is of such a nature that a reasonable man would know that it represented merely the opinion of the insured, there must be an actual intent to deceive and bad faith on the part of the insured.''

■■ The evidence in this case was in sharp conflict. Three reputable physicians testified positively that they had severally attended a man named Emilio Sandoval a number of times before the making of the application, and that he was suffering from various pulmonary troubles, asthma, fibrosis with bronchitis, and, perhaps, tuberculosis. Plaintiff, to meet this testimony, attempted to show that it was a case of mistaken identity and that they had attended another man of the same name. Not having attended deceased in his last illness, they could not positively identify him as the patient they had attended before June 15, 1932, but they described their patient as well as they were able. In this state of the case, we think the death certificate, being *prima facie* evidence as it was that one Emilio Sandoval, who was about the age of the one attended by the physicians who did testify, died of one of the diseases which they said their patient suffered from, and which, according to the certificate, began about the same time that they testified their patient had informed them his trouble began, was certainly material evidence tending to show, if believed by the jury, that the Emilio Sandoval attended by Drs. Brown, Hackett and Brockway, during the year before the making of the application for insurance, was the Emilio Sandoval

to whom the policy sued on in the present action was issued. If he was the same one, there can be no question that he made false representations of fact in his application, to wit, that he had not during the five years previous thereto been attended by a physician. It is true, of course, that a mere office call, or even a house call, for a minor ailment is not such a misrepresentation in regard to the attendance of a physician as will void a policy, for such a matter is generally held to be immaterial. But when the case is one of chronic asthma confining the patient to bed, which had continued to a greater or less degree for six months and which, from the condition of the patient, might continue indefinitely, we think that a misrepresentation upon this point is material and legal fraud. *Greber* v. *Equitable Life Assur. Soc.,* 43 Ariz. 1, 28 Pac. (2d) 817.

█ It was error to refuse to admit the death certificate and, under all the circumstances of the case, it appears to us the error was material. It is, therefore, unnecessary for us to consider the third question raised by defendant in regard to the sufficiency of the evidence, other than to say that while if we had been sitting on the jury, we might have rendered a different verdict, yet there is sufficient evidence in the record not physically impossible, nor legally incredible to sustain the verdict, and under such circumstances the credibility of the witnesses and the weight of the evidence is not for us.

█ Plaintiff urges that the record shows the party who took the application did not explain it to deceased, but arbitrarily filled in the answers to the vital questions, and that, as he was defendant's agent, the latter is not in a position to claim fraud. It is true that the written answers in the application were placed there by defendant's agent and that in

his direct examination he stated that the questions were not interpreted to deceased, but on cross-examination he stated that he did translate the questions into Spanish, the only language understood by deceased, and wrote down the answers the latter gave him. This left the question of whether deceased understood the questions and approved the answers one for the jury.

The judgment is reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.