469 P.2d 121

James W. MARINE, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 2 CA–CIV 768.

Court of Appeals of Arizona, Division 2.

May 14, 1970.

Rehearing Denied June 10, 1970.

Review Denied July 7, 1970.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellant.

Lesher & Scruggs, P. C., by William J. Schafer, III, Tucson, for appellee.

HOWARD, Chief Judge.

The appellant filed suit against the appellee to recover disability income benefits allegedly due under a policy of insurance issued by the appellee. The appellee coun-

terclaimed for rescission. At the trial of the action, counsel stipulated that all instructions be waived and that the jury be merely asked for answers to two interrogatories.[1] The jury answered the interrogatories in favor of the appellant. The appellee moved for a judgment notwithstanding the verdict and after a hearing on that motion, the court granted the same entering judgment in favor of the defendant and against the plaintiff.

The pertinent facts are as follows: On November 11, 1963, Richard Esch, an insurance salesman for Allstate Insurance Company, solicited the appellant for the purpose of selling him an income protection policy. This policy provided certain monthly income benefits in case of disability due to accident or sickness. Mr. Esch had had previous dealings with the appellant in the way of automobile insurance. An insurance application was filled out by Mr. Esch in response to questions posed to Mr. Marine and signed by the appellant. The application contained above the signature of the appellant the following statement:

"All of the foregoing statements and answers are complete and true and were read by me and I understand and agree that: a) they shall form the basis for any contract of insurance that may be issued; b) insurance, if issued, will be effective on the date stated in the policy; c) sickness which first manifests itself within 30 days after the policy's effective date will not be covered."

At the time of the signing of the application of insurance appellant had been diagnosed as having multiple sclerosis. Appellant did not know that he had "multiple" sclerosis, but did know that a doctor in California had told him that he had "diffused sclerosis". Appellant maintains that he told Mr. Esch about the diagnosis of "diffused" sclerosis when he was filling out the application and that he also informed Mr. Esch of the fact that he had seen doctors in California and had been hospitalized one day in California while they performed a myelogram. Esch claims that the appellant never gave him this information.

The first knowledge that the appellant ever had, according to his testimony, that he had multiple sclerosis was when he was told this in 1965 by a Tucson doctor. In the latter part of 1965 the appellant became unable to work and in early 1966 he made out a claim statement on the policy.

The appellant's questions for review in essence revolve around the issue as to whether or not the appellant is excused from the rule set forth in Greber v. Equitable Life Assur. Soc. of United States, 43 Ariz. 1, 28 P.2d 817 (1934), for the reason that *truthful answers* are an exception to the rule stated in that case.

◼ The general rule is that the insured is bound by misstatements appearing in an application attached to the policy delivered to and retained by him. Greber v. Equitable Life Assur. Soc. of United States, supra; Appleman, Insurance Law and Practice § 9405; 7 Couch on Insurance § 35.211 (2nd Ed.). The reason for the rule as expressed in *Greber* is that the insured has the opportunity of examination and is under a duty to read over his application attached to the policy and correct any errors in the application. Does the fact that the insured gave truthful answers which are incorrectly recorded on the application by the insurance agent change the operation of the general rule? We think not. In 1954 our legislature enacted A.R.S. § 20–1108. It states:

"A. No application for the issuance of any life or disability insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy when

1. The two interrogatories were:
    1. Did the Marines tell Esch about the California doctors and California hospital?

2. Did the insurance company knowingly and intentionally reinstate the policy?

issued and delivered. This provision shall not apply to industrial life insurance policies."

Jurisdictions which had applied the doctrine of equitable estoppel prior to the enactment of such a statute have refused to do so since the enactment of a comparable statute. Metropolitan Life Ins. Co. v. Alterovitz,[2] 214 Ind. 186, 14 N.E.2d 570 (1938); Gillan v. Equitable Life Assur. Soc., 143 Neb. 647, 10 N.W.2d 693 (1943); Minsker v. John Hancock Mut. Life Ins. Co., 254 N.Y. 333, 173 N.E. 4 (1930); Comer v. World Insurance Company, 212 Or. 105, 131, 318 P.2d 916 (1957); Reserve Life Insurance Company v. Howell, 225 Or. 71, 357 P.2d 400 (1960). They state as grounds for their position that the statute involves the parol evidence rule, or, as in *Comer*, on the basis that the statute charges the insured with notice of the contents of the application thus, making it the duty of the insured to speak up or be estopped to deny the answers in the application.[3]

There are cases holding to the contrary.[4] In John Hancock Mutual Life Insurance Company v. Schwarzer, 354 Mass. 327, 237 N.E.2d 50 (1968), the Massachusetts Supreme Court allowed the insured to recover stating:

"We recognize that the limitation here applied upon the rule that one accepting a contract is bound by all its terms, in alleviating the overreaching of appli-

cants, also risks fraudulent imposition by applicants upon insurers. The control, however, of this sort of imposition, either on the applicant or the insurer, lies to a substantial extent within the insurer's power in the modification of procedures for obtaining and submitting applications."

Although there may be merit to the view expressed above, our *Greber* case quotes with approval and relies upon the *Minsker* case.[5] Whether the basis be the parol evidence rule or the estoppel doctrine espoused by *Comer*, the appellant was foreclosed from questioning the correctness of his application.

■■■ Appellant claims that A.R.S. § 20–1109 requires *actual* fraud. This statute provides:

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an

2. This case imputes to the legislature enacting such a statute an intention to eliminate the possibility of the defense, otherwise available to an insured that unknown to him, the agent of the insurer has falsified answers truthfully communicated by the applicant to such agent. 5 Williston on Contracts § 750A (3rd Ed.). But see Vance, Insurance at 512 n. 91 (2d Ed. 1930).

3. In Hein v. Family Life Insurance Company, 60 Wash.2d 91, 376 P.2d 152 (1962), Washington followed *Comer*. But see Fox v. Bankers Life & Casualty Co., 61 Wash.2d 636, 379 P.2d 724 (1963), where it does not appear in the opinion that the application was attached to the policy and sent to the insured with

the policy. And see also Olson v. Bankers Life Insurance Company of Nebraska, 63 Wash.2d 547, 388 P.2d 136 (1964), distinguishing *Hein* and stating: "When an insurer's agent construes the materiality of questions in an application to the prospective insured *by stating* that certain information is immaterial or not required, any misrepresentations resulting therefrom are not chargeable to the applicant but to the insurer, for the reason that the agent is not the agent of the applicant but of the insurer."

4. See 26 A.L.R.3d 6, at 15 et seq., for exhaustive annotation on this subject.

5. See, 16 Cornell L.Q. 235, commenting on the Minsker case.

amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

Prior to the enactment of A.R.S. § 20–1109 the rule in Arizona was that failure to disclose material facts with no intent to deceive, in an application for an insurance policy where the insured knew of those facts at the time of his application, constituted *legal* fraud and voided the policies. American Nat. Ins. Co. v. Caldwell, 70 Ariz. 78, 216 P.2d 413 (1950); Greber v. Equitable Life Assur. Soc. of United States, supra; Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423 (1934); Sovereign Camp, W.O.W., v. Sandoval, 47 Ariz. 167, 54 P.2d 557 (1936); First Nat. Ben. Soc. v. Fiske, 55 Ariz. 290, 101 P.2d 205 (1940).

When a statute uses words whose meaning has become well-known and well settled under judicial decision, it will be presumed that the legislature used such words in the sense justified by long judicial sanction. State v. Jones, 94 Ariz. 334, 385 P.2d 213 (1963). As previously noted the courts of Arizona when speaking of application of insurance have always interpreted "fraud" as encompassing both "legal" and "actual" fraud. Had the legislature intended to limit the fraud to actual fraud it easily *could* have done so.[6] We, therefore, hold that A.R.S. § 20–1109 *does not require an intent to deceive.*

■ Appellant contends that even if the omitted information had been set forth on the application it would have made no difference since Allstate in all events probably would not have checked or made any further investigation since it did not bother to contact the doctor whose names were listed on the application. We think it is just as reasonable to assume that information in the blocks provided on the application with the words "myelogram" and "lesion on spine" and "diffused sclerosis" would have put the appellee on inquiry.

■ Lastly, in the reply brief, the appellant argues that the jury finding that the insurance company knowingly and intentionally reinstated the policy is determinative of the case. In Evans v. Federal Savings and Loan Insurance Corp., 11 Ariz. App. 421, 464 P.2d 1008 (1970), it was held that an issue may not be effectively raised for the first time in the reply brief. We believe that principle is applicable and controlling in this case. Furthermore, in light of our disposition of this case the issue of reinstatement is moot.

For the foregoing reasons, the judgment is affirmed.

KRUCKER, J., concurs.

HATHAWAY, Judge (dissenting).

In *Greber* there could be no finding of knowledge imputed to the insurance company because of the misinformation concededly furnished by the applicant. Here, the jury found a full disclosure to the defendant's agent. That knowledge is in law the knowledge of the insurer, principal, whether or not communicated to it by its agent. Commercial Credit Co. v. Eisenhour, 28 Ariz. 112, 236 P. 126 (1925).

Having candidly disclosed the information required by the insurer, the applicant should not be required to re-examine the application to determine which information the insurance agent found pertinent. Protection of the insurer from its agent's errors and omissions at the price of disaster to an applicant, sanctifies and fosters over-reaching and is fundamentally unfair.

The methods employed in processing applications lie substantially within the control of the insurer. See authorities pointed out as contrary authorities in the majority opinion. The insurer should not be shielded from its own wrong. I believe the verdict should be reinstated and judgment entered thereon.

6. Sec. § 48.18,090, Revised Code of Washington for an example of clear legislative intent to limit fraud to actual fraud.