IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIRIAM ARELLANO, a widow,
*Plaintiff/Appellee/Cross-Appellant,*

*v.*

PRIMERICA LIFE INSURANCE COMPANY, CO., a Massachusetts
corporation; DONALD EDWARD PAGE, JR. and JANE DOE PAGE dba
PRIMERICA FINANCIAL SERVICES; HUEL COX, JR. dba COX &
ASSOCIATES AND PRIMERICA FINANCIAL SERVICES,
*Defendants/Appellants/Cross-Appellees.*

No. 1 CA-CV 13-0011

FILED 08-12-2014

Appeal from the Superior Court in Maricopa County
No. CV2007-012403
The Honorable Colleen L. French, Judge pro tempore
The Honorable John A. Buttrick, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH
DIRECTIONS**

COUNSEL

Frederick C. Berry, Jr., PC, Phoenix
By Frederick Curtis Berry, Jr.

Schneider & Onofry, PC, Phoenix
By Charles D. Onofry, Luane Rosen
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Jennings Strouss & Salmon, PLC, Phoenix
By John J. Egbert
*Counsel for Defendants/Appellants/Cross-Appellees*

## OPINION

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**O R O Z C O,** Judge:

¶1        Miriam Arellano (Mrs. Arellano) brought suit against Appellants Primerica Life Insurance Company (Primerica) and several of its employees.  A jury found substantially in favor of Mrs. Arellano. Primerica, Donald Edward Page, Jr. (Donald) and Huel Cox, Jr. (dba Cox and Associates)[1] appeal (1) the trial court's ruling that the life insurance application was inadmissible; (2) the court's denial of Primerica's motion for judgment as a matter of law regarding the tort of forgery; and (3) the punitive damages award.  On cross-appeal, Mrs. Arellano appeals the trial court's denial of her request for interest on unliquidated damages pursuant to Arizona Rule of Civil Procedure 68(g).  For the following reasons, we affirm in part, reverse in part, and remand to the trial court with directions.

## FACTS AND PROCEDURAL HISTORY

¶2        In October 2006, Mrs. Arellano twice met with Tammy S. (Tammy) a Primerica agent with Cox, in order to obtain life insurance for her husband, Martin Arellano (Mr. Arellano).  On the second visit, Mr. Arellano completed the life insurance application (Application #1) and medical questionnaire with the assistance of Tammy, as well as Mrs. Arellano  because Mr. Arellano did not speak or write "a lot of" English. Tammy advised the Arellanos they qualified for a $100,000 life insurance policy.  Tammy also took a mouth swab for lab testing from Mr. Arellano and accepted a premium payment from Mrs. Arellano.

¶3        Later, Mrs. Arellano contacted Tammy to explain she was having second thoughts about purchasing the policy, because the premium was too high,.  Another agent in the Cox office, Donald, then met with Mrs.

---

[1]      For purposes of this opinion, we refer to Huel Cox as "Huel" and Cox and Associates as "Cox".

Arellano. Donald did not meet with Mr. Arellano, who never knew Mrs. Arellano met with Donald.

¶4        At their meeting, Donald told Mrs. Arellano he could increase the coverage to $150,000 for a slightly higher premium. Mrs. Arellano agreed and, provided a premium payment, this time to Donald. Mrs. Arellano testified that, at the meeting's conclusion, she understood the policy was in effect immediately, based upon Donald's statement that her check was proof of coverage. Donald did not provide Mrs. Arellano a copy of a new or revised life insurance application (Application #2). Furthermore, Donald did not ask Mrs. Arellano to sign Application #2. Donald submitted Application #1 and Application #2 (collectively the Applications) to Cox for processing.

¶5        Because Mr. Arellano's age was incorrectly reflected[2] on Application# 2, the $150,000 insurance coverage requested, and Mr. Arellano's history of hypertension, Primerica required an underwriting medical interview and additional medical tests of Mr. Arellano. Primerica's outside vendor, Examinations Management Services, Inc. (EMSI), contacted Mr. Arellano to conduct a telephone interview on January 8, 2007, to obtain necessary medical information and to arrange for the collection of required blood and urine specimens. After the EMSI representative identified herself, Mr. Arellano stated "Uh . . . oh, they already got one for me." The representative advised him she was verifying information and asked Mr. Arellano if he had spoken with Donald. Mr. Arellano responded, "Oh, no. My wife already bought some for me. At another company; I don't know where." Upon hearing this, the representative thanked Mr. Arellano and ended the call.

¶6        As a result of the conversation with Mr. Arellano, the EMSI representative issued an alert to Donald's attention at the Cox office, advising him that Mr. Arellano cancelled his application. By this time, however, Donald no longer worked for Primerica. No one from Primerica ever contacted the Arellanos.

¶7        Mr. Arellano died suddenly on March 14, 2007. Thereafter, Mrs. Arellano submitted a claim for death benefits to Primerica. Primerica denied the claim, asserting there was no policy or coverage because Mr. Arellano failed to schedule the required medical tests and advised the EMSI

---

[2]      Donald switched the dates of birth for Mr. Arellano and Mrs. Arellano on Application #2.

representative, who in turn advised Primerica, that he was no longer interested in the coverage. Along with the denial letter, Primerica included a copy of Application #2 that contained signatures and initials Mrs. Arellano later testified were forged.

¶8 Mrs. Arellano filed suit against Primerica, Tammy, Donald, and Huel claiming breach of contract and bad faith as to Primerica and insurance producer malpractice as to Tammy and Donald. After discovery, Mrs. Arellano filed an amended complaint, and added breach of contract to procure insurance against Donald; consumer fraud, fraud and negligence against Tammy, Donald, Huel and Primerica; promissory estoppel against Primerica and Donald; waiver and reasonable expectations against Primerica; forgery against Tammy, Donald and Huel; and added Huel to the insurance producer malpractice claim. Mrs. Arellano alleged her initials were forged in an attempt to reduce the policy coverage from $150,000 to $100,000. The amended complaint also alleged Mr. Arellano's signature was forged in two separate places on Application #2. Primerica denied liability, contending that the Arellanos made material misrepresentations in the Applications and failed to satisfy the conditions necessary for the Applications to be processed and coverage issued.

¶9 Mrs. Arellano served an offer of judgment on Primerica for $150,000 plus costs and attorney fees of $15,000 or such other amounts determined by the court. Primerica declined the offer.

¶10 The case initially went to trial in January 2012. Shortly before that trial commenced, Mrs. Arellano filed a memorandum regarding the inadmissibility of the insurance applications pursuant to Arizona Revised Statutes (A.R.S.) section 20-1108 (2010). Mrs. Arellano argued that:

> Primerica claims that no temporary insurance came into existence under the conditional coverage contract because the Arellanos failed to satisfy three of the conditions for coverage. One of those conditions, Condition #1, required that all the information on the application be "true and complete.". . . Defendants claim the application contained false information . . . .
>
> Although [Mrs. Arellano] maintains that all information provided was accurate, whether there is a question of accuracy presupposes that Primerica can establish that the Arellanos made certain affirmative representations. If there is no admissible evidence that any untrue

4

representations were made, then this defense fails. In this case, Defendants' only evidence on this point is the insurance application itself. . . .

. . . However, Arizona law is well-established that an insurance application is <u>not admissible</u> in a civil action unless a copy of the application was attached to the policy when delivered.

¶11 The court agreed with Mrs. Arellano and ruled the Applications were inadmissible. Based upon this ruling and upon the parties' subsequent stipulation, the trial court granted a mistrial.

¶12 A second trial began in March 2012. Without admitting the Applications, Mrs. Arellano's handwriting expert testified that Application #2 contained forgeries. Moreover, he testified that it was obvious some effort was made to mimic Mrs. Arellano's signature. The expert also noted that the forger misspelled Arellano, and most people do not have a problem spelling their own name.

¶13 The trial court dismissed: all claims against Tammy; the forgery, fraud, and consumer fraud claims against Huel; and the forgery claim against Donald.

¶14 The jury found in favor of Mrs. Arellano and against Primerica in the following amounts: $164,586 for the breach of contract claim; $32,000 for the forgery claim; $82,000 for the promissory estoppels claim; $57,400 for the negligence claim; $82,000 in bad faith damages; and $1,117,572 in punitive damages. Based on its determination of Mrs. Arellano's comparative fault, the jury reduced the negligence award by thirty percent to $40,180.

¶15 The jury found in favor of Mrs. Arellano and against Huel for $100,000 for the insurance provider malpractice claim and $73,800 for the negligence claim. Based on its determination of Mrs. Arellano's comparative fault, the jury reduced the negligence award by ten percent to $66,420.

¶16 The jury also found in favor of Mrs. Arellano against Donald for negligence in the amount of $49,000. Based on its determination of Mrs. Arellano's comparative fault, the jury reduced the award by forty percent to $29,400.

**¶17**　　　　The trial court denied Primerica's motion to reduce the punitive damages award.  In the final judgment, the court struck Mrs. Arellano's proposed language requesting prejudgment interest on her unliquidated claims based upon Mrs. Arellano's offer of judgment declined by Primerica.  The court ruled that A.R.S. § 44-1201.D barred "pre- or post-judgment interest on punitive damage awards."

**¶18**　　　　Primerica, Donald and Huel timely appealed, and Mrs. Arellano timely cross-appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21 (2003), and -2101.A.1 (Supp. 2013).

## DISCUSSION

I.　　　Admissibility of the Life Insurance Applications

**¶19**　　　　Primerica argues that the trial court erred as a matter of law when it applied A.R.S. § 20-1108.A to exclude the Applications from evidence.

**¶20**　　　　When determining the admissibility of evidence at trial, the trial court enjoys broad discretion.  *Conant v. Whitney*, 190 Ariz. 290, 292, 947 P.2d 864, 866 (App. 1997).  Accordingly, we will not disturb a trial court's exclusion of evidence unless it abused its discretion or incorrectly applied the law.  *Id.*; *see also Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App. 2000).  However, when the trial court's ruling was predicated on the interpretation of a statute, our review is de novo.  *See, e.g.*, *Escamilla v. Cuello*, 230 Ariz. 202, 205, ¶ 13, 282 P.3d 403, 406 (2012).

**¶21**　　　　"Our principal goal when interpreting a statute is to give effect to the legislature's intent."  *Blevins v. Gov't Emps. Ins. Co.*, 227 Ariz. 456, 459, ¶ 13, 258 P.3d 274, 277 (App. 2011).  Primarily, we rely upon the statute's language and interpret the terms according to their commonly accepted meanings.  *Id.*; *see also Nordstrom, Inc. v. Maricopa Cnty.*, 207 Ariz. 553, 556, ¶ 10, 88 P.3d 1165, 1169 (App. 2004) (stating a statute's plain language is the most reliable indicator of its meaning).  If a statute's language is clear and unambiguous, we will not look beyond the language and will simply apply it.  *Blevins*, 227 Ariz. at 459, ¶ 13, 258 P.3d at 277.

**¶22**　　　　In relevant part, § 20-1108 provides, "[n]o application for the issuance of any life or disability insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made part of the policy when issued and delivered."  Primerica urges that the

statute does not apply because "the applications could not have been 'attached to or otherwise made a part of' [an] alleged oral contract," and Mrs. Arellano relied on an oral contract. It also argues that no policy was ever issued or delivered. We disagree.

¶23 The statute defines an insurance policy as a "contract of or agreement for or effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof." A.R.S. § 20-1102 (2010). A contract for insurance may be oral or in writing. *See Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 125, 613 P.2d 283, 285 (1980) ("The general rule is that an oral contract of insurance is valid and enforceable."). Neither §§ 20-1102 nor -1108 distinguish between oral and written contracts. Given the statutes' language, we conclude they apply to both oral and written contracts.

¶24 In this case, the trial court correctly determined that a contract for a temporary policy existed between Primerica and Mrs. Arellano, presumably because Donald told Mrs. Arellano that her check was proof of coverage. If a copy of the Applications had been given to Mrs. Arellano at her meeting with Tammy and Donald, the Applications would have been admissible at trial. However, because the Applications were not provided to the Arellanos, the Applications were inadmissible.

¶25 The trial court's decision aligns with *Marine v. Allstate Insurance Co.*, 12 Ariz. App. 229, 469 P.2d 121 (1970). In *Marine*, this court held it was unfair to bind an insurance applicant to misstatements on an insurance application when the applicant lacked an opportunity to review and correct the statements. *Id.* at 230, 469 P.2d at 122; *see also Greber v. Equitable Life Assurance Soc'y of U.S.*, 43 Ariz. 1, 12, 28 P.2d 817, 821 (1934) ("When an insured receives a policy, it is his duty to read or have it read, and, if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected." (internal quotation marks omitted)).

¶26 Here, Primerica sought to admit the Applications to prove Mr. or Mrs. Arellano lied. However, neither Tammy nor Donald provided Mrs. Arellano with a copy of the Applications. Because of this, the Arellanos lacked the opportunity to correct any errors in the Applications. Thus, the trial court correctly excluded the Applications.

¶27 Primerica raises several concerns with the statute's application in this case. First, Primerica asserts the trial court's "erroneous interpretation . . . creates the potential for committing insurance fraud with

impunity." However, as the trial court correctly noted, Primerica denied the Arellanos an opportunity to correct any errors on the Applications. Moreover, given Arizona's recognition of oral contracts for insurance, the statute is applicable. *See Gulf Ins. Co.*, 126 Ariz. at 125, 613 P.2d at 285.

**¶28** Primerica also argues that the trial court erred in not reaching the same conclusion as in *Massachusetts Mutual Life Insurance Co. v. Manzo*, 519 A.2d 898 (N.J. App. 1986). There, the New Jersey Court of Appeals analyzed a statute that in all material respects is the same as A.R.S. § 20-1108.A. *See id.* at 900. Defendant Manzo applied for a life insurance policy and paid the agent "$200 in exchange for a 'Conditional Receipt.'" *Id.* Several months later, Manzo was found dead and the insurance company filed a declaratory action seeking to rescind the life insurance policy due to alleged misrepresentations of Manzo's health history in his life insurance application. *Id.* at 898. The trial court held that the application was inadmissible under the New Jersey statute and the New Jersey Court of Appeals reversed. Primerica's reliance on *Manzo* is misplaced. In *Manzo*, the insured was given a copy of the application, so he had an opportunity to correct any mistakes. *See id.* at 900. By contrast, the Arellanos were never given a copy of the Applications and never had an opportunity to review the Applications or correct any mistakes.

**¶29** For these reasons, we find the trial court did not err in excluding the Applications from evidence.

II.    The Existence of a Tort of Forgery

**¶30** Primerica next argues the "trial court erred by denying judgment as a matter of law, and by instructing the jury, with respect to the so-called 'tort of forgery.'" We review a trial court's denial of a judgment as a matter of law de novo. *Sec. Title Agency, Inc. v. Pope* (*Pope*), 219 Ariz. 480, 492, ¶ 51, 200 P.2d 977, 989 (App. 2008). Primerica contends the trial court should have granted its motion for judgment as a matter of law because Arizona "does not recognize a tort of forgery."[3]

**¶31** Primerica correctly argues that Arizona has never recognized a tort of forgery. The trial court denied the judgment as a matter of law

---

[3]    Mrs. Arellano argues Primerica waived this defense. The record does not support this contention. In its renewed motion for judgment as a matter of law, Primerica specifically argued that Arizona did not recognize the tort of forgery.

based, in part, upon Mrs. Arellano's citation to other jurisdictions that recognize such a tort. The cases cited, however, are not binding upon this court.

¶32 In the absence of Arizona statute or case law, we follow the Restatement (Second) of Torts (Restatement). *See, e.g.*, *Barnes v. Outlaw*, 192 Ariz. 283, 285, ¶ 6, 964 P.2d 484, 486 (1998). The Restatement does not recognize a tort of forgery. Accordingly, we vacate the jury's verdict on this claim because forgery is not recognized as a tort within the Restatement, and Mrs. Arellano points to no Arizona authority recognizing forgery as a tort.[4]

III.    Punitive Damages

¶33 Primerica lastly contends the trial court erred by refusing to reduce the jury's punitive damages award with respect to the insurance bad faith verdict. The jury awarded Mrs. Arellano $82,000 on the bad faith claim and further assessed punitive damages in the amount of $1,117,572. Primerica asserts the punitive damage award in this case violates due process.

¶34 The Due Process Clause in the Fourteenth Amendment of the United States Constitution "imposes a substantive limit on the size of punitive damages awards." *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 609, ¶ 83, 277 P.3d 789, 800 (App. 2012) (internal quotation marks omitted); *see also Hudgins v. S.W. Airlines, Co.*, 221 Ariz. 472, 489, ¶ 50, 212 P.3d 810, 827 (App. 2009) ("A grossly excessive punitive damage award violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution because the defendant did not have 'fair notice' of its exposure to the extent of punishment that could be imposed."). In accordance with this, our role is that of "gatekeeper" over verdicts including a punitive damages award. *See Nardelli*, 230 Ariz. at 609, ¶ 83, 277 P.3d at 806. As such, we review a punitive damages award de novo and "exercise exacting discretion and apply our combined experience and judgment" in reviewing the constitutional principles as well as this case's record. *See id.* at ¶ 84 (internal quotation marks omitted).

¶35 When reviewing a punitive damages award, we consider the following guideposts: (1) the degree of reprehensibility of defendant's conduct, (2) the disparity between plaintiff's actual or potential harm and

---

[4]    Because we find that the tort of forgery does not exist, we do not address whether the jury instruction for forgery was correct.

the punitive damages award, and (3) the difference between the jury's punitive damages award and the authorized civil penalties in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 418, 409 (2003). "[W]e view 'the evidence in a light most favorable to upholding the jury verdict' and will affirm 'if any substantial evidence exists permitting reasonable persons to reach such a result.'" *Pope*, 219 Ariz. at 498, ¶ 83, 200 P.3d at 995.

### A.     The Reprehensibility of Primerica's Conduct

**¶36**        The degree of reprehensibility of the defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). In analyzing reprehensibility, we consider whether (1) "the harm caused was physical as opposed to economic"; (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) "the target of the conduct had financial vulnerability"; (4) "the conduct involved repeated actions or was an isolated incident"; (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Nardelli*, 230 Ariz. at 610, ¶ 85, 277 P.3d at 807. No single element is dispositive. *See Hudgins*, 221 Ariz. at 490, ¶ 52, 212 P.3d at 828.

**¶37**        An award of punitive damages against an employer such as Primerica serves to encourage an employer to exercise control over its employees and agents. *See, e.g.*, *Pruitt v. Pavelin*, 141 Ariz. 195, 207–08, 685 P.2d 1347, 1359–60 (App. 1984). Viewing the evidence in the light most favorable to upholding the jury's verdict, Mrs. Arellano presented evidence of forgery of both Mr. Arellano's signature and forgery of her own initials on the revised application, purporting to unilaterally reduce the policy limit from $150,000 to $100,000 without Mrs. Arellano's knowledge or consent.[5] Primerica also accepted Mrs. Arellano's premium payment without obtaining Mr. and Mrs. Arellano's signatures on Application #2 for the insurance coverage (with Donald advising Mrs. Arellano that such payment constituted proof of coverage); failed to provide copies of the

---

[5]        Primerica asserts that the allegations of forgery do not constitute "malice, trickery or deceit for purposes of [the] reprehensibility factor." Also, at oral argument, Primerica's counsel argued that the jury could not consider the allegations of forgery when awarding punitive damages. However, Primerica has not cited, and we cannot find any, authority for this proposition. Therefore, we find that the trial court did not err in allowing the jury to consider forgery in assessing punitive damages.

documents to the Arellanos so they could verify the information; and never followed up with the Arellanos after the telephone call between Mr. Arellano and the EMSI representative. Thus, the record before us contains various reprehensible acts committed by or on behalf of Primerica. These acts weigh in favor of affirming the jury's punitive damages award.

    B.  Disparity Between Actual or Potential Harm Suffered by Mrs. Arellano and the Punitive Damages Award

**¶38**  There is no bright-line ratio between compensatory and punitive damages. *Nardelli*, 230 Ariz. at 611, ¶ 95, 277 P.3d at 808. An appropriate award of damages is a fact-sensitive inquiry. *Id.* However, "single-digit multipliers are more likely to comport with due process, [and] a factor more than four comes close to the line of constitutional impropriety." *See Hudgins*, 221 Ariz. at 491, ¶ 57, 212 P.3d at 829 (internal quotation marks omitted). The ratio in this case is approximately 13:1.[6]

**¶39**  The trial court instructed the jury that the measure of damages on the bad faith claim was to include: the unpaid benefit of the policy; the monetary loss experienced; and the emotional distress, humiliation, inconvenience, and anxiety experienced. The jury found that Primerica acted in bad faith in denying coverage under the policy.

**¶40**  On appeal, Mrs. Arellano argues the 13:1 ratio is permissible because the jury could have included the unpaid benefits of the policy and her attorney fees in its bad faith compensatory damage award. However, Mrs. Arellano was awarded the amount of the policy under the breach of contract claim. Further, Mrs. Arellano did not seek attorney fees as an element of her claim for bad faith damages, but rather as a separate claim under A.R.S. § 12-341.01. Finally, as Primerica argues, Mrs. Arellano has waived this argument because she failed to raise this issue with the trial court. *See, e.g.*, *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987) (noting that the general rule is "an appellate court will not consider issues not raised in the trial court.").

**¶41**  If Mrs. Arellano believed the verdict was inconsistent, defective, or nonresponsive because the jury did not include the unpaid policy benefit in the bad faith damage award, pursuant to Rule 49(c) of Arizona Rule of Civil Procedure, she could have moved for resubmission of the case, before the jury was excused. *See Trustmark Ins. Co. v. Bank One,*

---

[6]  The jury returned a verdict for compensatory damages of $82,000 and punitive damages of $1,117,572.

*Ariz., NA*, 202 Ariz. 535, 543, ¶ 39, 48 P.3d 485, 493 (App. 2002). Generally, when a verdict is manifestly irregular or defective, the trial court has the power to correct a verdict in a manner that conforms to the jury's intent, where jury intent can be ascertained with certainty. *S. Pac. R.R. Co. v. Mitchell*, 80 Ariz. 50, 66, 292 P.2d, 827, 837 (1956). Here, no one knows why the jury failed to include the unpaid policy benefit in the bad faith compensatory damage portion of its verdict. Use of Rule 49(c) would have allowed the trial court to seek clarification, and resubmit the issue to the jury if necessary. As a result, Mrs. Arellano's argument that the verdict should have included additional amounts is waived.

**¶42** We find the 13:1 ratio of punitive damages to compensatory damages weighs against affirming the punitive damages award.

### C. Comparability

**¶43** Lastly, Primerica argues the civil penalty of $50,000 allowed under A.R.S. § 20-456.B did not provide fair notice that it could be subject to a punitive damages award of more than $1 million.

**¶44** Primerica focuses its argument on our ruling in *Nardelli*, where a punitive damages award was reduced to the amount of the compensatory damages award. *See* 230 Ariz. at 612, ¶ 100, 277 P.3d at 809. However, *Nardelli* dealt with bad faith in an insurer's unreasonable decision to repair rather than replace the insured's automobile, to cover less than actual repair costs, and to not advise policyholders of relevant policy provisions. *See generally id.* In this case, the jury found that Primerica made promises of coverage through an agent, forged signatures, cancelled the application without notifying the insured or returning the insured's payment, and later denied a claim. The facts in this case are far more reprehensible than those in *Nardelli* and weigh in favor of affirming the award.

### D. Guidepost Application

**¶45** Applying these guideposts, we conclude that the amount of the punitive damages award was unconstitutionally improper and, as a result, mandates reduction. Even with Primerica's conduct falling on the middle to high range of reprehensibility, the ratio of 13:1 is too high and we therefore conclude a 4:1 ratio is appropriate and warranted. With that, we remand this case to the trial court with direction to reduce the punitive damages award to $328,000. *See Hudgins*, 221 Ariz. at 492, ¶ 65, 212 P.3d at 830 (reversing judgment and remanding case with instructions to reduce the punitive damages to $500,000 for each plaintiff).

IV.    Mrs. Arellano's Cross-appeal

¶46    On cross-appeal, Mrs. Arellano argues the trial court erred in denying her request for mandatory pre-judgment interest on her unliquidated damages in accordance with Arizona Rule Civil Procedure 68(g).  Primerica argues that A.R.S. § 44-1201.D.1 (Supp. 2013) "flatly prohibits courts from awarding prejudgment interest on any unliquidated damages resulting from a jury verdict."

¶47    Arizona Rule of Civil Procedure 68(a) provides that "any party may serve upon any other party an offer to allow judgment to be entered in the action."  The rule continues:

> If the offeree rejects an offer and does not later obtain a more favorable judgment . . . the offeree must pay, as a *sanction*, reasonable expert witness fees and double the taxable costs, as defined in A.R.S. § 12–332, incurred by the offeror after making the offer and prejudgment interest on unliquidated claims to accrue from the date of the offer.

Ariz. R. Civ. P. 68(g) (Emphasis added).

¶48    An award of sanctions pursuant to Rule 68(g) is mandatory. *See Levy v. Alfaro*, 215 Ariz. 443, ¶ 8, 160 P.3d 1201, 1203 (App. 2007).  The purpose of the rule is to promote settlement and to avoid protracted litigation. *Id*. at ¶ 12.  In this case, Mrs. Arellano made an offer of judgment for $150,000 plus $15,000 in attorney fees or such other amount that might be determined by the court.  Primerica rejected the offer.  At the conclusion of trial, the jury found for Mrs. Arellano in excess of the offer of judgment.  Consequently, if Rule 68(g) applies, Primerica is obligated to pay prejudgment interest on all Mrs. Arellano's unliquidated damages in accordance with the rule.

¶49    However, A.R.S. § 44-1201.D.1 prevents a trial court from awarding prejudgment interest "for any unliquidated, future, punitive or exemplary damages that are found by the trier of fact."  Bad faith damages are, by definition, unliquidated until awarded by a verdict, order, decision or judgment. *See John C. Lincoln Hosp. and Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 544, ¶ 40, 96 P.3d 530, 542 (App. 2004) (defining an unliquidated claim as an amount "depend[ent] upon the opinion or discretion of the judge or jury").

¶50    We review questions of law de novo, including interpretation of statutes and court rules. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, ¶

20, 281 P.3d 1010, 1015 (App. 2012); *Perguson v. Tamis,* 188 Ariz. 425, 427, 937 P.2d 347, 349 (App. 1996). Furthermore, our "rules of procedure and statutes should be harmonized whenever possible and read in conjunction with each other." *See Drozda v. McComas*, 181 Ariz. 82, 85, 887 P.2d 612, 615 (App. 1994) (internal quotation marks omitted).

**¶51** "Under common law, prejudgment interest on a liquidated claim is a matter of right in an action on a contract or in tort. . . . But prejudgment interest is generally not awardable on unliquidated claims, including personal injury claims." *Metzler v. BCI Coca-Cola Bottling Co. of Los Angeles*, 690 Ariz. Adv. Rep. 7, ¶ 11 (July 11, 2014) (internal quotation marks omitted) (internal alterations and citations omitted). However, Rule 68 was amended in 1992 to "increase the sanctions associated with failures to accept offers of judgment to include . . . post-offer prejudgment interest on unliquidated claims." *See* Ariz. R. Civ. P. 68, State Bar Committee Note, 1992 Amendments. "By imposing as a sanction against a losing offeree an award of 'prejudgment interest on unliquidated claims,' Rule 68(g) permits the successful offeror to obtain monies to which she would otherwise not be legally entitled." *Metzler* at ¶ 12.

**¶52** In 2011, A.R.S. § 44-1201 was amended to separate "judgments from loans, indebtedness, or other obligations so as to limit the interest applicable to judgments." *Id.* at ¶ 15 (internal quotation marks omitted). However, § 44-1201 was not intended as a sanction, rather the statute precludes a party from obtaining prejudgment interest on an unliquidated claim as an element of damages.

**¶53** Rule 68(g) gives "rise to a right or entitlement to prejudgment interest. But that right is contingent on the successful party obtaining 'a more favorable judgment' than what it previously offered to accept in settlement." *Id.* at ¶ 20. "What would otherwise be an unliquidated claim on which no prejudgment interest is owed becomes liquidated, memorialized, and enforceable only when judgment is entered, even though the time frame for which prejudgment interest is owed obviously predates the judgment." *Id.*

**¶54** Therefore, we find the trial court erred by declining to award Mrs. Arellano prejudgment interest on her unliquidated claims, pursuant Rule 68(g).

V.      Attorney Fees

**¶55**      Mrs. Arellano requests her attorney fees and costs on appeal pursuant to § 12-341.01.  In the exercise of our discretion, we decline to award attorney fees on appeal.

## CONCLUSION

**¶56**      Based upon the foregoing, we affirm the trial court's decision excluding the insurance application from evidence.  We reverse the trial court's decision denying judgment as a matter of law with regard to the tort of forgery because forgery is not a recognized tort.  Further, we vacate the amount of the punitive damages award and reduce it to a 4:1 ratio.  Finally, we reverse the trial court's denial of pre-judgment interest on Mrs. Arellano's unliquidated claims and remand the matter to the trial court with directions to amend the judgment to conform to this opinion.



Ruth A. Willingham · Clerk of the Court
FILED: gsh