Argued October 5, reversed November 30, 1960

# RESERVE LIFE INSURANCE COMPANY *v.*
# HOWELL
357 P. 2d 400

*Mark C. McClanahan*, Portland, argued the cause for appellant. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

*John C. Caldwell*, Oregon City, argued the cause for respondent. On the brief were Hibbard, Jacobs & Caldwell, Oregon City.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Reserve Life Insurance Company, from a decree of the circuit court which (1) dismissed the plaintiff's complaint, (2) awarded the defendant judgment upon her third, fourth, fifth and seventh counterclaims and (3) dismissed the defendant's first, second and sixth counterclaims. The suit which was terminated in that manner was instituted by the plaintiff for the rescission of three policies of health and accident insurance which it issued April 9, 1956, to the defendant. The complaint alleged that the defendant deceived the plaintiff into issuing the policies by materially misrepresenting the state of her health when she applied for the policies. The amended answer (1) denied those allegations, (2) averred that the plaintiff waived its right to rescind by accepting premiums after it had knowledge of the alleged misrepresentations and (3) presented seven counterclaims which were based upon provisions of the policies for health benefits and averments of instances of illness. The answer alleged that the defendant gave correct replies to the plaintiff's soliciting agent and that the latter, in entering in the applications for insurance the substance of the information which she gave, was solely responsible for misrepresentations contained in the applications. The answer did not allege that the defendant in any manner changed her position in reliance upon the fact that the plaintiff retained the premiums which she paid. Nor did it allege that the defendant relied upon the acceptance of the premiums as a representation by the plaintiff that the policies were still in force. The reply denied all

affirmative averments of the answer and alleged that the plaintiff did not waive its right to rescind the policies through the acceptance of the premiums because its acceptance of them was inadvertent and the plaintiff had promptly tendered back all payments of premiums upon discovering the alleged misrepresentations.

The first assignment of error follows:

"The court erred in finding that plaintiff's sending of premium notices and retention of premium payments constituted a waiver of plaintiff's right to rescind and in decreeing upon such basis that plaintiff's complaint be dismissed, and in refusing to find in favor of plaintiff and against defendant on plaintiff's claim for rescission."

When the defendant made her applications to the plaintiff in April 1956 for the policies of insurance under consideration she signed applications which contained the following questions and answers:

"6. Are you * * * now in good health and free from any physical or mental defects?

" Yes."

"8. Have you * * * ever had any disease of the heart, lungs, kidneys, stomach, or bladder; or high blood pressure, paralysis, arthritis, syphilis, cancer, diabetes, hernia, goitre, or rectal disease?

" No.

"9. Have you * * * received medical or surgical advice or treatment within the past three years?

" No."

In June, November and December of 1956 and January of 1957 the defendant made claims for benefits and thereupon the plaintiff investigated the truth of her answers in the applications from which we just

quoted. The investigations satisfied the plaintiff that the answers were false and in January 1957 it sent a letter to the defendant giving notice that it rescinded the policies. The letter was accompanied with the plaintiff's check which tendered to the defendant the total of all premiums which she had paid up to that date. February 1, 1957, an attorney whom the defendant had retained challenged the plaintiff's right to rescind and returned the check which the plaintiff had tendered for the return of the premiums. The suit now before us was instituted April 24, 1957. The complaint, after alleging that the plaintiff had previously tendered to the defendant a return of all premiums that the plaintiff had paid, continued:

> "* * * Said tender was rejected by defendant and a renewal thereof by plaintiff under the circumstances would be a vain and useless effort. Plaintiff has been, at all times subsequent to said tender, ready and willing, and hereby offers, to return the parties to the status quo existing prior to the issuance of said insurance policies."

March 3, 1958, ten and one-half months after the complaint was filed, the defendant amended her answer and for the first time alleged as a defense that (1) the plaintiff had requested and the defendant had paid all premiums on the policies, (2) all amounts had been retained by the plaintiff, including those paid after the commencement of suit, and (3) by such course of conduct the plaintiff waived its right to rescind.

Officials of the plaintiff testified that normally when a policy was rescinded plaintiff's premium department "flagged" or coded the insured's file so that further payments from that insured would be refused, but that in this instance, the defendant's file, without the knowledge of those responsible for the department

was not coded until after the defendant's amended answer caused the plaintiff to discover the error. The plaintiff does a large volume of business and its billing is handled by electronic machines at the rate of approximately 15,000 per day. The plaintiff employs an established procedure when it has rescinded a policy. One of its vice presidents mentioned it as follows, and in so doing accounted for the clerical error which permitted premium notices to be sent to the defendant and premiums to be accepted from her after the plaintiff had notified her by letter in January 1957 that the policy was rescinded and had instituted this suit April 24, 1957:

"* * * In a situation like that now we have the recision letter going out to the policyholder by the benefit department, is that correct?

"A That is correct.

"Q Now what happens from that point?

"A From that point then the benefit department sends the claim file, the application, a little memo, together with the tabulating cards that they have typed up to our department, that is to the underwriting department, where somebody under my supervision completes the tabulating cards, sends those on over then to the tabulating department. Before these cards, though, can go on to the tabulating department, it is necessary that my department contact the tabulating department or premium department, whichever you may prefer to call it.

\* \* \*

"Q What is the purpose of finding that [paid to] date?

"A Because we want to be sure that all premiums paid have been refunded to the policyholder and so that we can give our premium accounting department the proper card, our paid to date, to comb their records from, you see.

"Q It's to find out the full amount that should be refunded?

"A That is correct.

*          *          *

"Q All right. What then occurs?

"A We make up a little card. I have in fact the original card that my department made up and sent over to our premium department to get a paid to date. When the card came back from our premium accounting department, premium tabulating department, it showed a paid to date of February 9, 1957. We then immediately sent all of our records back to our benefit department. When I say 'we,' a lady, two ladies under my supervision, each one completing their necessary part of the work, sent the file back to the benefit department with a notation that the premium was paid to February 9, 1957, so that the benefit department or claim department could refund to Mrs. Howell the additional months premium which had been credited.

"Q Now when you said 'additional month,' that's additional above what?

"A What had previously been returned to her by the benefit department.

*          *          *

"Q Now you have mentioned in this case that you found out first that there was another month's premium that had been received from Mrs. Howell that should have been refunded, and for that purpose you sent the file back to the benefit department to take care of the refund.

"A (Nodding head.)

"Q What under your procedures should have happened to the file or should have happened from that point?

"A The benefit department should have mailed Mrs. Howell the month's premium, that is the January payment, should have mailed it back to her

and then to have sent the file back to my department for us to have completed the coding of the records and sent on to the premium or tabulating department for them to have coded the records so that if any more premium payments came in they would not be accepted."

Through some one's mistake the file was not returned to the underwriting department, and thereby the latter did not notify the premium department that no payments should be accepted from the defendant. The error was first discovered by the plaintiff's officials when the defendant filed her amended answer in which she alleged waiver. The plaintiff then tendered to the defendant all of the premiums it had received from her and reiterated its rescission of the policies. We see from the facts just stated that the plaintiff's rescission procedure was actually set in motion, but inadvertently the coding of the file was omitted. Before this suit was filed the defendant was notified by letter, as we have stated, that the plaintiff had rescinded the three policies. The letter returned to the defendant all premiums she had paid. The defendant rejected the returned premiums. The payments which she made thereafter were paid with knowledge that the plaintiff had rescinded the policies and that a suit in furtherance of that purpose was pending. In a memorandum opinion the trial judge stated:

"It is the opinion of this court that the defendant, Loris E. Howell, made a misrepresentation of her physical condition and her previous medical care in her application to the plaintiff company for policies of insurance with said company, and that the plaintiff company, at least in part, was induced by said misrepresentations to enter into the contracts of insurance, which are the subject of this suit."

The defendant-respondent's brief with commendable frankness declares:

"* * * There is no question but that the answers as shown on the forms for application for the policies of insurance are incorrect. * * *"

The trial judge ruled that because the plaintiff for a period of about 15 months after it had notice of the misrepresentations made by the defendant, sent premium notices to her and accepted her payments that it "thereby waived its right to avoid the policies on the ground of misrepresentation."

■■ The defendant, as we have seen, concedes that the plaintiff was induced by misrepresentations to issue the policies. We believe that the misrepresentations were material. But the defendant argues that she should not be held responsible for those misrepresentations because they were made by plaintiff's soliciting agent in accordance with a company policy. The plaintiff argues that *Comer v. World Insurance Co.,* 212 Or 105, 318 P2d 916 (1957), holds that when the application is a part of the policy, as in this case, the insured is estopped to assert that the answers given to the application's questions were improperly inserted by another. The defendant argues that the Comer case is distinguishable because there the soliciting agent was attempting to perpetrate a fraud on his principal, while here company policy dictated the agent's actions. The plaintiff's agent testified that he had no knowledge of any serious illnesses of the defendant at the time of the application, and that company policy was to ignore only minor illnesses—"minor colds and things like that." In addition it would be difficult to believe that a health insurance company would instruct its agent to conceal the correct answers

to questions which it considers important enough to insert in its application form.

The Comer case held that under ORS 736.305 (which makes an insurance application part of the policy when a copy is delivered to the insured with that intent) an insured is charged with knowledge of the statements contained in the application and that if he remains silent he is estopped from asserting that the answers in the application form are not his own. We believe that the holding is controlling here and follow it.

■ The defendant also argues, as we have seen, that the plaintiff waived its right to rescind by accepting premiums after it had notice of the misrepresentations. She argues that it could waive its right to rescind without intending to do so by electing a course of action, that is, by accepting the benefit of the contract, i.e. the premiums.

The plaintiff states that waiver is an "intentional relinquishment of a known right," and that it did not intend to continue to receive the defendant's premiums. It argues that oversight in failing to stop the mechanical billing process amounts to inadvertence only, not to intent to waive, and calls attention to the fact that it had sent the defendant notice that the policies were rescinded. We believe that the evidence demands a finding that the plaintiff's continued acceptance of the premiums was inadvertent.

■ The word "waiver" is a generic term which denotes the termination of a party's rights by any one of several different kinds of action or conduct: Williston on Contracts, rev. ed., §§ 678 and 679. *Steiner, Inc. v. Hill et al*, 191 Or 391, 226 P2d 307, 230 P2d 537, in taking note of the fact that the word "waiver" has a variable meaning, mentioned three of the types of

action, commonly termed "waiver," which can terminate the rights of a party: (1) The party possessed of a right under an unperformed contract, such as an insurance policy, may enter into a new contract with the other party and substitute it for the existing contract. He thereby terminates or waives the rights he previously possessed. The defendant makes no claim that a new contract was substituted for the three policies which we have mentioned, and hence we need give no further attention to this method of effecting a waiver. (2) The party who possesses a right, such as this plaintiff (to rescind the policies) may so conduct himself that he justifiably induces the other party (a) to believe that he will not assert or exercise his right and (b) to change his position to such an extent that if the first party is permitted to insist upon his rights he (the second party) will be prejudiced. Normally, an estoppel is thereby created whereby the previous right is waived. We have mentioned the fact that the defendant does not plead an estoppel. (3) The third type of waiver mentioned in *Steiner, Inc. v. Hill et al*, supra, is waiver by election. That type of waiver occurs when a party has the right to make an election between two inconsistent rights. The election of one of them constitutes the waiver of the other. See Williston on Contracts, rev. ed. § 684. The defendant, as we have seen, contends that when the plaintiff discovered the misrepresentations in her insurance applications it was required to elect (1) to accept the premiums and waive the fraud or (2) to rescind the policies and return the premiums. The defendant argues that the plaintiff's action in sending the defendant the monthly premium notices and retaining the premium money was a waiver of the fraud, that is, of the right to rescind. She seems to believe

that it is immaterial that the plaintiff's action was inadvertent.

Faced with the contentions just mentioned we must examine the action which the plaintiff took after it discovered the false representations contained in the applications and determine whether the plaintiff elected to keep the premiums and waive its rights to rescind. We have stated that when the plaintiff discovered the falsity (1) it promptly notified the defendant by letter that it rescinded the policies (2) it returned the premium money (3) when the defendant returned the payments which the plaintiff had sent to her the plaintiff instituted this suit and (4) when the plaintiff rescinded the policies it placed in operation its rescission procedure but through the error of a clerk the defendant's file was not flagged.

Comment (d) of § 68, Restatement of the Law, Restitution, says: "Since affirmance is a unilateral act, a unilateral mistake is sufficient for its avoidance." Accordingly, much of the action of the plaintiff upon which the defendant relies is without significance.

■■ A waiver "is the voluntary, intentional relinquishment of a known right." Appleman, Insurance, § 9081. Accord: *Berman v. Fraternities Health & Accident Ass'n.*, 107 Me 368, 78 A 462 (1910) ; *Alsens American Portland Cement Works v. Degnon Contracting Co.*, 222 NY 34, 118 NE 210 (1917). It is also "settled law that a waiver of a legal right results only when there is both full knowledge of all the facts and the existence of the right of election coupled with an intention to relinquish it." *Stanley v. Mueller*, 222 Or 194, 350 P2d 880 (1960). Therefore, if a party does not intend to forego his rights, there can generally be no waiver. However, a waiver arising from an election does not

depend upon intention: Williston on Contracts, rev. ed. § 684.

The defendant urges that the case should be affirmed on the theory that "the acceptance of premiums by an insurance company with knowledge of facts rendering a policy void from its inception waives any right to enforce a fortfeiture or avoid the policy." Appleman, Insurance § 9271. Statements to that effect are found in *Johnson v. Life Ins. Co. of Ga.*, 52 So 2d 813 (Fla. 1951); *O'Donnell v. Kansas City Life Ins.*, Mo App 1925, 277 SW 973 (1925); *Jarvis v. Pennsylvania Casualty Co.*, 129 W Va 291, 40 SE 2d 308 (1946); *Miller v. Phoenix Assur. Co.*, 52 NM 68, 191 P2d 993 (1948). The above cases and others that support the general rule stated by Appleman are factually different from the case at bar since a suit for rescission was not pending in those cases when the company accepted premiums. In the absence of litigation, the acceptance of premiums by the insurer may be an unequivocal act manifesting its intention to relinquish its right to void the policy. However, the pending suit makes the acceptance of the premiums ambiguous, negating any clear expression of intent to waive a right or effect an election.

■ The requisite intention to establish a waiver can not be found in negligence or mistake. *Metropolitan Life Ins. Co. v. Blum*, 7 AD2d 488, 184 NYS2d 455 (1955), was a suit by the insurer to rescind for material misrepresentation a whole life policy and a disability clause in a second life insurance policy. The company attempted to return the premiums that were paid, but the insured refused and a suit for rescission was instituted. While the suit was pending the insured received premium notices and paid them, which led to the de-

fense of waiver. The court stated that "negligence or oversight is not enough to establish waiver. * * * The intention to waive is an indispensable constituent of waiver. *Gutman v. United States Cas. Co.*, 241 App Div 752, 753, 270 NYS 160. The only fair inference to be drawn from the evidence is that an organization whose branches were widely scattered, and which at the time was engaged in contesting this policy, repudiated the proffered benefit within a reasonable time after its responsible executive officers were enabled to know that it held defendant's money in its possession. *Travelers' Ins. Co. v. Pomerantz*, 246 NY 63, 71, 158 NE2d 24." Applying this statement to the facts of the case at bar, we note that the negligence or oversight in not returning the file to the underwriting department is not sufficient to establish the requisite element of intention. Moreover, in both cases, a suit for rescission was pending while the premiums were being paid. When responsible executive officers learned the insurer was receiving premiums they were proferred to the insured. Similarly, in an action on a fire insurance policy, it was held that the insurer did not waive its defense because a clerk accepted a premium after liability was denied.

In *Ryan v. Rockford Ins. Co.*, 85 Wis 573, 55 NW 1025 (1893), the court said:

"* * * the testimony clearly shows that the sending of such notice was a pure mistake, made by one having no sufficient knowledge of the facts; that it was entirely unauthorized by any person having authority to bind the company; and that it was repudiated by the company, and the money thus sent by plaintiff was at once tendered to him after the mistake was discovered, and before the plaintiff could possibly have been prejudiced thereby. In the foregoing transactions we find no element

of an estoppel, or any valid waiver by the insurance company of its defense to the policy."

See to like effect *Laustrup v. Bankers Life Co.*, Mo., 196 SW2d 260 (1939). None of those cases speak of election, but in all the insured claimed that the conduct of the insurer caused it to waive its rights; in all receipt of the premiums was inadvertent, and in all the courts held that without the element of estoppel no waiver could be found.

The Oregon cases do not provide a precedent which is squarely in point, but their rationale is consistent with the cases just cited. *Stanley v. Mueller*, supra; *Steiner Inc. v. Hill*, supra; *Johnson v. Feskens*, 146 Or 657, 31 P2d 667 (1934); *Lupton v. Bangs*, 117 Or 11, 242 P 830 (1926). They are in accord with the rule which we quoted from the Restatement that "since affirmance is a unilateral act, a unilateral mistake is sufficient for its avoidance." The record satisfies us that the action of the plaintiff in sending to the defendant premium notices and retaining the defendant's remittances was inadvertent. We are also satisfied that the defendant was fully informed that the plaintiff wished to rescind and that she did not change her position under a belief that the policies were in effect.

The same circumstances convince us that the plaintiff made no election in the defendant's favor between the plaintiff's right to rescind the policies, on account of the defendant's misrepresentation, and its right to waive the fraud and remain bound on the policies. Williston on Contracts, rev. ed. § 684, says:

"In a correct definition of waiver, wherever that word is used in the sense of election, the requisite of even apparent intention to surrender a right is absent."

Since we have not been certain that the defendant, in speaking of election, used the term in its correct sense, we considered the element of intention.

We quote the following from Williston on Contracts, rev. ed. § 685:

"* * * Where, however, neither circumstance enters into the case an election should not be binding without either actual knowledge or blameworthy ignorance of the material facts. The principle of election is an equitable one and, unless the other party has been deceived or the situation changed, it is inequitable to regard a choice as final unless the party having the right of election was aware, or should have been aware, of all material facts making one choice desirable or the reverse. It is often stated in positive terms that knowledge of facts is necessary, but blameworthy ignorance is sufficient; and it is better to say so plainly than to indulge in a fictitious conclusive presumption of knowledge."

It is clear that the plaintiff made an election, but its election was to rescind.

The circuit court upon evidence which fully justified its finding found that the defendant made material misrepresentations which induced the plaintiff to issue the policies. The defendant does not plead estoppel or change in position. We do not believe that the plaintiff by acceptance of the premiums waived the misrepresentations. The element of intention is missing. If in a case similar to this the insured pleads and proves that the acceptance of the premiums misled him to a prejudicial change of position, it will be time enough to consider in that case waiver based upon estoppel. Estoppel seemingly can adequately protect an insured in such a situation.

We sustain the first assignment of error. The policies must be deemed rescinded.

The second assignment of error is based upon the judgments which were entered upon the counterclaims. Since the policies had been rescinded it is unnecessary to give attention to the counterclaims.

The plaintiff is entitled to have a decree entered in its favor. Costs will be awarded to neither party.