Charles E. **ROBERTSON**, Plaintiff,

v.

**HARTFORD ACCIDENT AND INDEM-NITY COMPANY**, a corporation, Defendant.

Civ. No. 69–553.

United States District Court, D. Oregon.

Aug. 27, 1970.

Supplemental Finding of Fact Sept. 22, 1970.

Millard M. Becker, Groce, Becker & Sipprell, Portland, Or., for plaintiff.

Theodore B. Jensen, Davis, Jensen, Martin & Robertson, Portland Or., for defendant.

## OPINION

ALFRED T. GOODWIN, District Judge:

Charles E. Robertson as a defendant in a negligence case suffered a $170,574.15 judgment. He now brings this action against the Hartford Accident and Indemnity Company for damages caused by Hartford's failure to settle the negligence claim within the $5,000 limits of an insurance policy.

Robertson and William C. Pringle were friends. Pringle was the owner of an automobile and of a policy of public liability insurance providing the minimum coverage that would satisfy Oregon's financial responsibility law. After a day of driving around together, in company

with two other friends, Pringle asked Robertson to take over the driving duties, and Pringle went to sleep in the back seat of his own automobile. Robertson negligently drove the automobile off the road and into a ditch. The only person seriously injured in the accident was Pringle, whose spinal cord was damaged. The injury left Pringle permanently paralyzed in all four limbs. The accident was promptly reported to Hartford. Robertson had no insurance of his own.

The Portland claims supervisor who investigated the accident incorrectly assumed that Robertson's liability to Pringle would be that of a host automobile owner to a guest passenger under ORS 30.115. Accordingly, all Hartford employees handling the case treated the file as a "medical-pay" claim. Hartford closed the file after paying out the $1,000 limits of the "medical-pay" provision of the policy. By the time the $1,000 was paid, however, Pringle's medical expenses had already exceeded $9,000, and were later to exceed $20,000.

Pringle's family consulted their attorney, who brought in William Schulte as an associate. Mr. Schulte made a thorough investigation of the accident and of the assets of Charles E. Robertson. It appeared that the only asset Robertson had was his coverage as an additional insured under Pringle's policy. Realizing that litigation costs would quickly dissipate the meager limits of the available insurance, Mr. Schulte made a verbal demand upon Hartford's Portland claims office for immediate settlement of Pringle's claim by payment of the face amount of the policy ($5,000) without litigation. Mr. Schulte's telephone conversation was followed the next day by a formal written demand, which letter was referred to an employee of Hartford's claims department in Portland.

Hartford then consulted the Portland attorney who handled most of Hartford's defense work in the Portland area. He promptly advised Hartford to pay the face amount of the policy and settle the claim, as in his opinion the Oregon guest statute did not apply to the facts of the case.

Without answering Mr. Schulte's letter directly or even asking for additional time in which to study the question of settlement within the policy limits, Hartford's Portland office took the routine steps necessary to reopen a closed "medical-pay" file, with a view toward defending any legal action that might be filed against Robertson. One week after mailing the demand letter, having heard nothing from Hartford, Mr. Schulte filed the action which produced the judgment against Robertson.

There is no evidence that before Robertson was sued Hartford ever advised Robertson of its opportunity to close the case within the $5,000 limits of the policy. After Mr. Schulte had filed the action in the state circuit court, Hartford notified Robertson of his personal exposure to liability in the sum of $495,000, the amount by which Pringle's demand exceeded $5,000, and advised Robertson to take appropriate action to protect himself. Robertson saw an attorney, but by this time the only action that could have protected Robertson would have been the prompt payment of the face amount of the policy to Pringle.

Hartford proceeded, however, to defend the case, and Hartford's attorney apparently did so in a skillful and workmanlike manner, because the damages were held down to the sum of $150,000 general damages and $20,574.15 in special medical expenses. These damages were low, in light of the permanent and devastating injuries suffered by Pringle.

Pringle's attorney attempted to satisfy the judgment by an attachment against Robertson, but found no assets. (Hartford has paid its $5,000, plus court costs, to reduce the judgment.) In a creditor's proceeding, Pringle has attempted to levy upon Hartford as a garnishee, on the theory that Hartford holds assets belonging to Robertson in an amount sufficient to satisfy the entire judgment.

This garnishment proceeding so far has been unsuccessful in the state courts.

In the present action, Robertson contends that Hartford sacrificed Robertson's interests in favor of its own. The opinions of various insurance claims personnel and Oregon lawyers were received in evidence. The Oregon lawyers and insurance men called by the plaintiff testified that a reasonable and prudent insurance company in the circumstances of this case would have paid Pringle's demand promptly upon receiving Mr. Schulte's letter.

Mr. Schulte testified that payment of the policy limits would have been accepted in full settlement for several days after the action was commenced, but that by the time such payment was offered some six weeks later, his authority to settle for $5,000 had expired.

The witnesses for Hartford, on the other hand, testified that in their opinion Hartford exercised good faith and acted reasonably under all the circumstances. These witnesses assumed that Hartford's original handling of the file had been reasonable, and that Hartford's office routine upon reopening the file produced no unreasonable delay.

■ I find from the preponderance of the evidence that Hartford, through its Portland claims office, was negligent and that Hartford's negligence produced the loss to Robertson in the form of a judgment in excess of the policy protection.

Hartford's investigation of the accident was, by Hartford's own testimony, incomplete and superficial. Hartford's handling of the file cannot be justified in the light of Hartford's duty to protect the interests of its insured.

Hartford's assumption that the case did not expose its insured to liability was not founded upon a reasonable investigation, but rather grew out of a blind refusal to believe that an early impression might be wrong. Hartford's exposure was relatively inconsequential compared to that of the insured. Yet Hartford gave no evidence that it considered its insured as possessed of any rights in the case.

Reasonable minds, in 1967, could have differed concerning the application of the Oregon guest statute. It was not until after the trial of the Pringle damage action against Robertson that the Oregon Supreme Court decided that ORS 30.115 did not bar an action based upon ordinary negligence when an automobile owner was injured in his own car through the negligence of a person driving with his permission. See Prosch v. Cater, 252 Or. 63, 448 P.2d 380 (1968). There were strong indications in earlier cases, however, that the court would so hold when the proper question presented itself. See, e. g., Sheehan v. Apling, 227 Or. 594, 363 P.2d 575 (1961). Reasonable men engaged in the insurance business could not have failed to realize that there was a serious possibility of liability far in excess of the face amount of the insurance policy. Long before Hartford received the demand letter from Mr. Schulte, Hartford knew that Pringle's medical expenses had exceeded $9,000 and were still mounting.

If anyone in authority in the Hartford organization had paid proper attention to the file, Pringle's potential claim would have been kept in mind until the statute of limitations had run. But the file was neglected. Without a comprehensive investigation and the preservation of statements of all witnesses, Hartford's routine handling of the file left Robertson wholly unprotected.

■ I do not believe it is necessary under Oregon law to find that an insurance company is guilty of malicious misconduct or fraud in order to impose upon it liability for negligence in allowing a judgment to be suffered by an insured when the judgment could have been prevented by ordinary due care in the management of an accident claim.

■■ Under Oregon law, an insurance underwriter owes his insured a duty of exercising reasonable care to protect

the interest of the insured as well as the interests of the insurance underwriter. It does not matter whether the insured paid a premium for the insurance protection or whether the insured, like Robertson, is an additional insured under a policy paid for by someone else. Someone has paid for insurance protection, and the underwriter has a duty to exercise at least the same degree of care in the insured's behalf as it exercises in its own behalf. Groce v. Fidelity General Insurance, 252 Or. 296, 448 P.2d 554 (1968); Radcliffe v. Franklin Nat'l Ins. Co., 208 Or. 1, 298 P.2d 1002 (1956).

■ Because I am satisfied that the Hartford claims personnel were not actuated by malice or bad faith, I have ruled that the plaintiff is not entitled to punitive damages. The case is one based on ordinary negligence. The fault arose out of bureaucratic bungling and assembly-line inefficiency, not bad faith.

The foregoing will constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). The Clerk will prepare a judgment for the plaintiff against the defendant after all the components have been calculated. Pursuant to a stipulation that the court may fix attorneys fees in a separate proceeding, the judgment will remain open until the plaintiff's attorneys fees for the enforcement of this claim have been determined under the rule announced in Groce v. Fidelity General Insurance, supra.

### SUPPLEMENTAL FINDING OF FACT

At the conclusion of the trial the court requested memoranda from counsel on the law and the facts with reference to a reasonable attorneys' fee to be recovered by the plaintiff against the defendant under Oregon law.

The court having reviewed the memoranda and affidavits filed by counsel for both parties, and now being fully advised, hereby finds that the sum of $12,500 is a reasonable sum for the plaintiff to recover against the defendant as attorneys' fees.