Joyce Alene BATON, Personal Representative of the Estate of Jon Baton, Deceased, Plaintiff-Appellee,

v.

TRANSAMERICA INSURANCE COMPANY, a corporation, Defendant,

v.

CAVALIER INSURANCE CORPORATION, a corporation, Defendant-Appellant.

Joyce Alene BATON, Personal Representative of the Estate of Jon Baton, deceased, Plaintiff-Appellant,

v.

TRANSAMERICA INSURANCE COMPANY, a corporation, Defendant-Appellant,

v.

CAVALIER INSURANCE CORPORATION, a corporation, Defendant.

Nos. 77–3137, 77–3138.

United States Court of Appeals, Ninth Circuit.

Oct. 26, 1978.

Rehearing Denied Dec. 6, 1978.

William F. Schulte, Edwin J. Welsh, Portland, Or., for defendant-appellant.

Michael A. Lehner, Walter J. Cosgrave, Portland, Or., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON *, District Judge.

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

GOODWIN, Circuit Judge:

These combined appeals arise from the confluence of a fatal accident, clear liability, and minimal insurance policy limits. Plaintiffs sought in this litigation to create excess "coverage" out of an insurer's failure to settle within policy limits and within plaintiff's time deadline. The plaintiff appeals from a judgment for one insurance carrier; the other carrier appeals from a judgment for the plaintiff.

Jon Baton was killed when his pickup truck collided with another pickup negligently driven by Dennis Carpenter. David Carpenter, Dennis's father, owned the truck which Dennis was driving. David Carpenter's automobile liability insurance with Transamerica Insurance Company provided David with coverage for certain claims up to $50,000. The Transamerica policy provided Dennis no coverage. Dennis Carpenter was insured for automobile accident liability by Cavalier Insurance Corp., with a policy limit of $10,000. Both companies initially admitted liability to their insureds.

The fatal accident occurred on December 23, 1973. Three weeks later, an attorney for the estate of Jon Baton wrote a demand letter to an adjuster for Transamerica. The letter stated that a settlement "in the gross amount of the limits of coverage available will be accepted."

Meanwhile, the two insurance companies agreed through their local functionaries that because Transamerica appeared to have the higher policy limits, Transamerica would take charge of negotiations with the Batons. Transamerica advised Cavalier of the contents of the attorney's letter, to which we will refer as the first demand letter.

Transamerica, believing it had coverage under its policy, paid to David Carpenter the damages estimated to the Carpenter truck; and also paid some other small sums to a third party involved in the accident.

On January 28, 1974, two weeks after the first demand letter, the Batons' attorney sent Transamerica another letter which contained no specific demands, but which discussed the property-damage portion of the Baton claim.

On February 5, 1974, the Batons' attorney sent to Transamerica a second demand letter. In this letter, the attorney noted that "[W]e have previously demanded on the BI [bodily injury] portion of this claim $110,000 or policy limits, by letter dated 14 January 1974." The letter then stated:

"I have not filed a damage claim, in order to hold my fees and other expenses to the estate to a minimum. We request, [sic] that you advise within 10 days, or by the close of business on the 15th of February 1974,

1—The total amount of limits of insurance available,

2—Your willingness to pay the same (if less than $110,000), or

3—That you explain the insurer's position in this matter, if it is based on some feeling that our position is not well founded.

4—You should also, within that time let me know about the PD [property damage] claim.

I am enclosing a copy of a standard 10 day demand letter which is being sent out to Mr. Carpenter.

Should you fail to respond within the time limit, the offer to settle within your combined total limits, or for $110,000, will be revoked, and an action will be filed."

The attorney enclosed a copy of this letter for Cavalier, but Transamerica did not send it to Cavalier. The attorney did not send a copy directly to Cavalier.

Meanwhile, on January 25 a Transamerica employee had told the adjuster that there was a named-driver exclusion in David Carpenter's policy that excluded from coverage "any claim arising from accidents which occur while any automobile is being operated by Dennis Carpenter." The following Monday, January 28, the adjuster requested authority from his superiors to deny coverage on the basis of this exclusion. Transamerica notified David Carpenter, on or about February 1, 1974, that Carpenter's policy did not cover the claim.

On February 6, before he received the attorney's 10-day demand letter of February 5, the adjuster telephoned the Batons' attorney, the Cavalier claims adjuster, and a William Scalf, Carpenter's personal attorney, and notified them that Transamerica would not provide coverage because of the exclusion.

David Carpenter had signed the named driver exclusion attached to the policy in effect from March 1972 to March 1973. An identical exclusion was attached to his 1973–1974 policy, but he had not signed it. By its terms, however, the exclusion was not conditioned on being signed by the insured.

On February 8, copies of the Carpenter policy and the signed 1972–1973 exclusion went to the Batons' attorney. Cavalier's adjuster also received copies of the demand letters of January 14 and February 5. These copies were received by Cavalier no earlier than February 9, six days before the deadline for accepting Batons' settlement offer.

Neither insurance company responded to the demand letter of February 5. On February 19, Jon Baton's estate filed a wrongful death claim against the Carpenters. On March 1, Cavalier offered to pay its limits ($10,000) and the Batons rejected the offer.

The case went to trial and resulted in a jury verdict of $71,343 in favor of the Baton estate. Cavalier paid the estate its $10,000 policy limit.

In 1975 the Baton estate brought garnishment proceedings against Transamerica. The estate sought payment of Transamerica's $50,000 policy limit as partial satisfaction of the remaining unpaid portion of the judgment against the Carpenters.

The Carpenters assigned to the Baton estate their claims against Transamerica and Cavalier for "bad faith" failure to settle within the policy limits. The Baton estate then brought suit against the two insurance companies on these claims.

The district judge ordered the garnishment proceeding consolidated at trial with the action for failure to settle. After a court trial, the court held that Transamerica had no contractual obligation to provide coverage for accidents involving Dennis Carpenter. Judgment was entered for Transamerica in the garnishment proceeding. The court also found that Transamerica incurred no liability for its role in the settlement negotiations. The court found Cavalier liable for bad-faith failure to settle, and assessed damages equal to the amount of the excess judgment.

## I. Transamerica

The parties agree that the substantive law of Oregon applies in these two cases. We will consider first the judgment in favor of Transamerica.

■ The Baton estate argues that Transamerica's named-driver exclusion was invalid. The estate says that because David Carpenter had not signed the named-driver exclusion attached to the policy in effect at the time of the accident, the exclusion never became effective. This assertion is somewhat surprising, in light of the finding of fact that David Carpenter knew of and agreed to the exclusion of his son from coverage under the 1973–1974 policy. If the parties to the insurance contract agreed to the exclusionary endorsement, and calculated the premiums accordingly, the endorsement was valid and in effect at the time of the accident.

Whether or not there may be some customary practice among insurance companies concerning signatures on exclusionary endorsements is irrelevant. The trial judge's conclusion that no contractual obligation existed is supported by evidence and will not be disturbed.

■ The Baton estate also argues that even if Transamerica had no contractual obligation to provide coverage for the Baton-Carpenter accident, Transamerica waived the exclusionary endorsement and is estopped from asserting it. The estate claims that Transamerica waived the exclusion by telling Carpenter and the Batons' attorney that the accident was covered by the policy, by taking control of the investi-

gation and the defense, and by paying the property damage claims of Carpenter and a third party involved in the accident.

The district court correctly rejected the estate's theory of waiver and estoppel. *Schaffer v. Mill Owners Mutual Insurance Co.*, 242 Or. 150, 407 P.2d 614 (1965). In *Schaffer*, the plaintiff had purchased an automobile liability insurance policy with an exclusionary endorsement that excluded from coverage accidents occurring "while any automobile is being operated by any male operator under 25 years of age." The premium was based in part upon the exclusion of the identified risk. An accident occurred while the plaintiff's 17-year-old son was driving. When the insurance company denied coverage, the insured argued that the exclusion did not apply and that the insurance company had waived its right to assert the exclusion because (1) it filed a form with the Department of Motor Vehicles in which it acknowledged coverage under the financial responsibility law, and (2) it paid a property damage claim on the insured's automobile to a lienholder who was protected under his policy.

The Oregon Court first held that the exclusion did apply to the accident in question. The court then discussed the insured's claim of waiver. The court held that "[w]aiver or estoppel cannot be the basis for creating a contract of coverage where no such contract previously existed." 242 Or. at 156, 407 P.2d at 617. The court also stated that "the payment of [the property damage claim] is irrelevant and does not prevent defendant from asserting its nonliability under the insurance contract as to one who was not a party to the payment." 242 Or. at 156–57, 407 P.2d at 617.

The estate cites 14 cases in support of its argument that the trial judge should have found coverage by waiver or estoppel. Of these, only two are Oregon cases, and neither is helpful to the estate.

*Jaloff v. United Auto Indemnity Exchange*, 120 Or. 381, 250 P. 717 (1927), was written 38 years before *Schaffer*. In *Jaloff*, the court found that the insurance policy did cover the accident. The discus-

sion of waiver, accordingly, was not applicable to *Schaffer*.

The second Oregon case cited by the estate, *Reserve Life Insurance Co. v. Howell*, 225 Or. 71, 357 P.2d 400 (1960), involved a claim that an insurer had waived its right to rescind by accepting premiums after it had knowledge of misrepresentations. The court held that there was no waiver in that case because "[t]he requisite intention to establish a waiver can not [sic] be found in negligence or mistake." 225 Or. at 83, 357 P.2d at 406. This case is consistent with *Schaffer*.

Other cases cited by the estate reveal that some jurisdictions have estopped an insurer from asserting a defense of noncoverage where the company's conduct has prejudiced its insured. *See, e. g., Transamerica Insurance Group v. Chubb and Son, Inc.*, 16 Wash.App. 247, 554 P.2d 1080 (1976). The holding of *Schaffer* suggests that Oregon has chosen not to recognize this type of coverage by estoppel. The court in *Schaffer* did not discuss the issue of prejudice to the insured. In the case at bar, in any event, the Batons have suggested no way in which the Carpenters were prejudiced.

None of the cases cited by the estate requires this court to hold that Transamerica's six-week delay in denying coverage constituted a waiver or precluded the insurer from denying coverage. David Carpenter knew at all times that he had paid for no coverage for his child.

## II. *Cavalier*

■ Under Oregon law, a liability insurer must exercise good faith and due care in the settlement and defense of claims on behalf of its insured. *Radcliffe v. Franklin National Insurance Co.*, 208 Or. 1, 298 P.2d 1002 (1956); *Eastham v. Oregon Auto. Ins. Co.*, 273 Or. 600, 540 P.2d 364 (1975). In *Eastham*, the court noted· that "there is little difference between the concepts of 'good faith' and 'due care' ", with respect to the duty of an insurer towards its insured. 273 Or. 610, 612, 542 P.2d 895, 896 (on petition for rehearing).

The trial judge held that Cavalier's failure to respond to the Baton estate's settlement demand of February 5 within the demand's 10-day limit constituted bad faith and a lack of due care.

The parties agree on the standard to be applied in this case. As stated in *Eastham*,

"Good faith requires the insurer, in handling negotiations for settlement, to treat the conflicting interests of itself and the insured with impartiality, giving equal consideration to both interests. With respect to settlement and trial, an insurance company must, in the exercise of good faith, act as if there were no policy limits applicable to the claim and as if the risk of loss was entirely its own. Bad faith is normally demonstrated by proving that the risks of unfavorable results were out of proportion to the chances of a favorable outcome. *Radcliffe*, supra at 47, 298 P.2d 1002. R. Keeton, Insurance Law 511, § 7.8(b) (1971)." 273 Or. at 607, 540 P.2d at 367.

Under this standard, an insurance company may be liable for a failure to accept an unequivocal settlement demand within the policy limits where a judgment in excess of policy limits is likely. *Radcliffe v. Franklin National Insurance Co., supra; Grumbling v. Medallion Insurance Co.,* 392 F.Supp. 717 (D.Or.1975); *Robertson v. Hartford Accident and Indemnity Co.,* 333 F.Supp. 739 (D.Or.1970).

In *Grumbling*, the court imposed liability on an insurer who failed to accept a settlement offer within the 15-day time limit placed on the offer by the injured plaintiff. The court found that the 15-day limit on the offer was reasonable and that the sole reason for the company's failure to make a timely response was a company practice of transmitting instructions by mail instead of over the telephone. This leisurely attitude toward the rights of the insured was held to be evidence of "bad faith" under Oregon law.

Cavalier makes the same three arguments on appeal as it made to the court below. Cavalier argues that (1) the Baton estate never offered to settle for Cavalier's policy limits; (2) even if the estate made such an offer, Cavalier's failure to respond within 10 days did not demonstrate bad faith because that time period was unreasonably short; and (3) the failure to respond within 10 days did not demonstrate bad faith because of the complications caused by Transamerica's sudden withdrawal from the case.

The trial judge found that the Baton estate made a "genuine offer" to settle the case for Cavalier's $10,000 policy limit "if that was all the insurance 'available'". This finding takes an excessively generous view of the demand letters.

First, the judge noted that Cavalier's agent had interpreted the lawyer's demand letters of January 14 and February 5 as demands satisfiable only by the combined policy limits, but the judge found that this interpretation was "inconsistent with the plain language of the demands themselves." The court seemed to be impressed by the use, in both demand letters, of demands for the limits of coverage "available".

The judge then discussed the lawyer's testimony that he had intended to settle the case for the amount of insurance available, whether it was $60,000 or $10,000. The judge indicated that he was skeptical of this testimony because it was self-serving. The judge then stated that:

"Although the [lawyer's] refusal to settle does not support Cavalier, there are certain facts that do raise some doubt as to whether the plaintiff was ever willing to settle for only Cavalier's policy limit of $10,000. One is that the settlement negotiations were with Transamerica and seemed to presume the existence of dual coverage. A second is that the case had judgment potential far in excess of $10,000, a fact which would have been obvious to an experienced personal injury lawyer such as [Batons' counsel]. However, the case law is uniform that such doubt must be resolved in favor of the insured * * *. [Citations, none from Oregon, omitted.]"

Cavalier argues that the trial court's finding of a settlement offer for Cavalier's policy limits was the result of an erroneous allocation of the burden of proof. We agree.

Nothing about this case justifies reordering the usual burden of proof which requires a plaintiff insured to prove the elements of an action for excessive damages based upon bad faith. The Second Circuit has noted that "in the usual case, to establish bad faith by the insurer an insured should demonstrate that the claim could have been settled within the policy limits . . . ." *Young v. American Casualty Co.*, 416 F.2d 906, 910 (2d Cir. 1969).

■ Courts have relieved plaintiffs of the burden of proving an offer to settle within policy limits only where the plaintiff's claim of bad faith is based on misconduct other than a failure to accept a settlement offer within policy limits. *See, e. g., Young v. American Casualty Co., supra,* and *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 N.J. 474, 323 A.2d 494 (1974). Where, as in this case, the insured's claim of bad faith is based solely on the failure to respond to a particular settlement demand, the insured must prove that the demand contained a firm offer to settle and that the failure to respond to that offer was unreasonable.

■ The trial court's finding that the lawyer had made a "genuine offer" to settle for the Cavalier policy limits is clearly erroneous. The plaintiffs did not prove that Cavalier ever had a clear opportunity to pay $10,000 and be released. Even the trial judge did not so interpret the lawyer's testimony. The only possible evidence of an opportunity to settle within Cavalier's limits was the January 14 and February 5 letters themselves. In the letter of February 5, the offer was stated as an "offer to settle within your combined total limits, or for $110,000". This language cannot be interpreted as an offer to settle for Cavalier's limits alone. The Batons would not have been bound to accept Cavalier's $10,000 if Cavalier had offered the $10,000 in response to that letter. Moreover, it is difficult to believe that Cavalier would not have snapped up any firm offer to settle for $10,000 if one had been made in this case.

Because the trial judge's finding of a "genuine offer" was apparently based on an erroneous application of the *Rova Farms Resort* and *Young* cases, *supra*, there was an error of law, whether or not the clearly erroneous standard of review applies.

Cavalier's second argument is that the time period attached to the offer of February 5 was unreasonably short. Transamerica did withdraw from all settlement negotiations. Under the circumstances, it was reasonable for Cavalier to assume it could not "accept" an offer to settle for combined limits thought to total some $60,000 by offering its policy limits of $10,000. Cavalier could reasonably assume that its subsequent offer of its $10,000 limits was a counter-offer rather than an acceptance of the offer of February 5, and that the 10-day limitation period was therefore inapplicable. If these assumptions by Cavalier were reasonable, Cavalier was neither negligent nor acting in bad faith when it failed to respond to the offer within 10 days. The plaintiffs had the burden of proving that Cavalier's assumptions were unreasonable, and offered no such proof.

The trial judge found that Cavalier was untimely, not because it failed to accept the February 5 offer within the 10-day period, but rather for its failure to keep that offer open by requesting an extension of time from the lawyer. If Cavalier reasonably believed that the offer of February 5 was not an offer to settle for its policy limits alone, then there was no reason for Cavalier to request an extension of time to keep this non-offer from lapsing.

■ Under Oregon law, an insurance company may be liable for its failure to accept a clear and unambiguous settlement offer within reasonable time limits placed on the offer by an injured plaintiff. *Grumbling v. Medallion, supra.* Moreover, where an injured plaintiff has made a settlement demand for more than policy limits, an insurer may be liable for its failure to make a counter-offer. *See, Rova Farms Resort,*

*Inc. v. Investors Insurance Co., supra.* However, in this case the court in effect imposed liability for an insurer's failure to make a counter-offer within the time limit of the original offer. This result has no support in the Oregon cases.

The record strongly suggests that the real cause of Carpenter's inability to settle with the Baton estate was the conduct of the Batons' lawyer. As the trial judge noted in his opinion, it was unlikely that the lawyer ever intended to settle the case for $10,000.

When Transamerica withdrew, the lawyer's thoughts turned to the possibility of an excess judgment against Cavalier. The plan, with the benefit of hindsight, turned his 10-day demand for the combined limits of two carriers into a demand for Cavalier's $10,000 limits. This view of the matter gave the lawyer an excuse to reject Cavalier's offer of its policy limits in March as untimely. If there was bad faith in this case, it was not proven to lie at the door of any insurance company.

Given the facts of this case, there is no reason to suspect that Cavalier would not have eagerly accepted a firm offer by the Baton estate to settle for Cavalier's $10,000 limits. The Oregon courts have indicated their openness to excess judgments when the conduct of the insurance company clearly establishes a lack of concern for the interests of the insured, but we have found no Oregon case permitting an insurance company to be set up by carefully ambiguous demands coupled with sudden-death time tables.

The judgment in favor of Transamerica is affirmed. The judgment against Cavalier is reversed.